# IN THE SUPREME COURT OF <u>TENNESSEE</u>
## AT KNOXVILLE

**FILED**

**FOR PUBLICATION**

**March 1, 1999**
**Filed: March 1, 1999**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

FRANCES MILLER BELL by
JANET SNYDER, Conservator &
Attorney-In-Fact,

  Plaintiff-Appellant,

V.

ICARD, MERRILL, CULLIS, TIMM,
FUREN AND GINSBURG, P.A.; and
WILLIAM GORDON BELL; and
HUNTON & WILLIAMS; and
LONG, RAGSDALE AND WATERS,

  Defendants-Appellees.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Hon. Wheeler Rosenbalm,
Judge

KNOX CIRCUIT

Supreme Court
No. 03S01-9809-CV-00101

FOR APPELLANT
<u>FRANCIS MILLER BELL:</u>
William R. Willis, Jr.
Alan D. Johnson
WILLIS & KNIGHT
Nashville, Tennessee

FOR APPELLEE
**ICARD, MERRILL, CULLIS, TIMM,**
**FUREN & GINSBURG, P.A.:**
William T. Ramsey
W. David Bridgers
NEAL & HARWELL, PLC
Nashville, Tennessee

**FOR APPELLEE WILLIAM G. BELL:**
Thomas S. Scott, Jr.
Dan D. Rhea
ARNETT, DRAPER & HAGOOD
Knoxville, Tennessee

**FOR APPELLEE HUNTON & WILLIAMS:**
John P. Konvalinka
Susan Kerr Lee
Tonya Kennedy Cammon
GRANT, KONVALINKA & HARRISON
Chattanooga, Tennessee

**FOR APPELLEE LONG, RAGSDALE &**
**WATERS:**
Darryl G. Lowe
LOWE, SHIRLEY & YEAGER
Knoxville, Tennessee

# O P I N I O N

TRIAL COURT AND
COURT OF APPEALS AFFIRMED.
         DROWOTA, J.

We granted this appeal to determine whether the plaintiff's complaint states a cause of action for abuse of process. We conclude that the complaint fails to allege one of the essential elements of the tort -- an improper act in the use of process. Accordingly, we affirm the judgment of the Court of Appeals which upheld the trial court's dismissal of the plaintiff's complaint for failure to state a claim upon which relief can be granted. Tenn. R. Civ. P. 12.02(6).

## BACKGROUND

This action arose from a dispute over the property of the plaintiff, Frances Miller Bell. Frances Bell is the widow of Malvern Bell. Janet Snyder is Frances Bell's daughter from a previous marriage and is currently serving as Frances Bell's conservator and attorney-in-fact. The defendant, William Bell, is Malvern Bell's nephew. The other defendants are various law firms that have represented William Bell in various legal proceedings. Because this action was dismissed for failure to state a claim upon which relief can be granted, the following summary of facts alleged in the plaintiff's complaint are taken to be true.[1]

Frances Bell and Malvern Bell were married in 1976. It was the second marriage for both. Because Frances Bell was an independently wealthy divorcee and Malvern Bell had a relatively small net worth, they executed a prenuptial agreement which provided that each would maintain and devise his or her own respective estate independent of the other.

---

[1]Ezell v. Cockrell, 902 S.W.2d 394, 396 (Tenn. 1995).

In October of 1994, while she and Malvern Bell were living in Florida, Frances Bell suffered a stroke which impaired her ability to walk, talk, and write. Following the stroke, Frances Bell signed a durable power of attorney naming Malvern Bell as her attorney-in-fact. Janet Snyder, who lived in Knoxville at this time, spoke with Frances Bell before the power of attorney was signed and agreed it was necessary if Frances Bell intended to remain in Florida. Over the ensuing months Frances Bell's condition worsened, and in March of 1995, she was relocated from Florida to a Knoxville nursing home near Snyder's residence. Malvern Bell remained in Florida.

Not long after Frances Bell relocated to Knoxville, Malvern Bell's health deteriorated. On the advice of Snyder, Frances Bell executed a new durable power of attorney which added Snyder as her alternate attorney-in-fact and provided that it was made in conformance with Tennessee and Florida law. Malvern Bell's health continued to decline and on October 26, 1995, he was declared incompetent and Snyder became attorney-in-fact for Frances Bell. Malvern Bell died a week later on November 3, 1995.

After Malvern Bell's death, Frances Bell, by and through Snyder, her attorney-in-fact, sued William Bell in Florida for conversion of her funds and misappropriation of a personal computer. This lawsuit concerns allegations that Malvern Bell, during the time he had power of attorney over his wife's affairs, misappropriated more than one million dollars of Frances Bell's assets and placed them into the Malvern Hill Bell Trust ("Trust"). Frances Bell was named a life-income beneficiary of the Trust with William Bell and his four sisters receiving the

remaining funds under Malvern Bell's will.  William Bell was also named trustee.

William Bell retained the law firm of Icard, Merrill, Cullis, Timm, Furen & Ginsburg ("Icard Merrill"), a defendant in this appeal, to represent him in the Florida litigation.  On December 6, 1995, William Bell, by and through counsel, filed a motion to dismiss or abate the Florida action asserting that Snyder was the true party pursuing the action under a durable power of attorney that was invalid under Florida law.

On December 11, 1995, five days after filing the motion to dismiss or abate the Florida action, William Bell, represented by the law firm of Long, Ragsdale, & Waters, a defendant in this appeal, filed a petition in the Chancery Court of Knox County seeking appointment of a conservator for Frances Bell.  The petition alleged that Snyder had brought the Florida litigation under an invalid power of attorney and for an improper purpose and asserted that an attorney conservator, David Draper, should be appointed to determine whether the Florida litigation was in Frances Bell's best interest.

During arguments before the Florida court on William Bell's motion to dismiss or abate, an attorney with Icard Merrill challenged Snyder's authority to institute suit pursuant to the power of attorney.  In support of this challenge, the attorney cited a Florida statute[2] which suspends all powers of attorney during the

_____

[2]Florida Statutes Annotated § 709.08(c)(1) (West 1997) provides in pertinent part: "If any person or entity initiates proceedings in any court of competent jurisdiction to determine the principal's incapacity, the authority granted under the durable power of attorney is suspended until the petition is dismissed or withdrawn.  Notice of the petition must be served upon all attorneys in fact named in any power of attorney which is known to the petitioner."

-4-

pendency of an "incapacity proceeding" and informed the Florida court that a conservatorship proceeding was pending in Tennessee.[3] According to the complaint, the Icard Merrill attorney also informed the Florida court that William Bell had no interest in Frances Bell's welfare and the only motive in filing the conservatorship proceeding in Tennessee was to affect the Florida litigation.

Approximately two weeks later, on February 1, 1996, William Bell voluntarily dismissed the Tennessee conservatorship petition. On February 15, 1996, Snyder filed a conservatorship petition in Knox County Chancery Court seeking to have the Chancellor name Snyder as Frances Bell's conservator. On February 21, 1996, Snyder also filed against William Bell an abuse of process and malicious prosecution suit on behalf of Frances Bell. William Bell retained the law firm of Hunton & Williams, also a defendant in this appeal, to represent him in that action.

On June 4, 1996, William Bell, again represented by Long, Ragsdale, & Waters, filed a second petition to have a Knoxville attorney, John A. Walker, II, appointed conservator for Frances Bell. This petition again alleged that an independent conservator was necessary to evaluate whether or not the Florida litigation was in Frances Bell's best interests. On June 28, 1996, the conservatorship petitions were consolidated.

On July 1, 1996, Frances Bell voluntarily dismissed her suit for abuse of

_____

[3]According to the brief filed on behalf of appellee William Bell, the Florida court did not stay the lawsuit in Florida.

process and malicious prosecution. On July 30, 1996, during hearings before the Florida court, an attorney for Icard Merrill explained that the conservatorship proceeding in Tennessee had been brought for two reasons: 1) to protect Frances Bell's interests since she was a life-income beneficiary of the Malvern Hill Bell Trust which was a defendant in the Florida litigation; and 2) to protect the interests of all the trust beneficiaries by challenging the authority of Snyder to pursue litigation against the Trust on behalf of her mother.

On August 16, 1996, the Chancellor heard arguments on Snyder's motion to dismiss William Bell's second conservatorship petition. At this hearing William Bell was represented by both Hunton & Williams and Long, Ragsdale & Waters. The Chancellor granted Snyder's motion and dismissed the second petition. Thereafter, on August 19, 1996, William Bell moved to intervene in Snyder's conservatorship proceeding. The Chancellor denied the motion to intervene, and Snyder was appointed conservator on November 7, 1996.

On January 13, 1997, Snyder filed the present suit on behalf of Frances Bell against William Bell and the law firms which have represented him in the Florida litigation and in the conservatorship proceedings in Tennessee. The complaint alleges that William Bell and the law firm defendants, acting in concert, filed the two petitions for the appointment of an independent conservator for Frances Bell solely to "scuttle" the Florida lawsuit against William Bell. The complaint sought damages for abuse of process and civil conspiracy to abuse process.

Pursuant to Tenn. R. Civ. P. 12.02(6), each of the defendants filed motions

to dismiss the complaint for failure to state a claim upon which relief can be granted. Following a hearing, the trial court granted the motions and dismissed the plaintiff's complaint as to all defendants stating that the complaint contained

> no allegation from which proof then can be adduced to support that the defendants in the course of all these activities that have been attributed to them actually abused process; that is, they used the process of the Chancery Court after it was issued for some purpose for which that process was not designed in the prosecution of conservatorship proceedings.

The plaintiff appealed, and the Court of Appeals affirmed the trial court's dismissal, finding that even if the complaint were assumed *arguendo* to allege an ulterior motive in the use of process, the trial court's dismissal was proper because the complaint did not allege the second element of the tort – an improper act in the use of process. The Court of Appeals emphasized that the "mere existence of an ulterior motive in doing an act . . . does not suffice," and stated that "merely instituting civil proceedings is generally not sufficient to support an abuse of process claim." Thereafter we granted the plaintiff's application for permission to appeal and now affirm the judgment of the Court of Appeals.

## STANDARD OF REVIEW

A Tenn. R. Civ. P. 12.02(6) motion to dismiss for failure to state a claim upon which relief can be granted tests only the legal sufficiency of the complaint, not the strength of a plaintiff's proof. Such a motion admits the truth of all relevant and material averments contained in the complaint, but asserts that such facts do not constitute a cause of action as a matter of law. In ruling upon a motion to dismiss,

courts should construe the complaint liberally in favor of the plaintiff, taking all allegations of fact as true. The motion to dismiss should be denied unless it appears that the plaintiff can prove no set of facts in support of her claim that would entitle her to relief. In considering this appeal from the trial court's grant of the defendants' motions to dismiss, we take all allegations of fact in the plaintiff's complaint as true, and review the lower courts' legal conclusions de novo with no presumption of correctness. Tenn. R. App. P. 13(d); Stein v. Davidson Hotel Co., 945 S.W.2d 714, 716 (Tenn. 1997); Pursell v. First American Nat'l Bank, 937 S.W.2d 838, 840 Tenn. 1996); Cook v. Spinnaker's of Rivergate, Inc., 878 S.W.2d 934, 938 (Tenn. 1994).

## ABUSE OF PROCESS

The plaintiff maintains that her complaint alleges both elements of the tort of abuse of process -- an ulterior motive and an improper act in the use of process. She points to the allegations of the complaint which charge that the conservatorship petition was filed only to gain a collateral advantage in the Florida litigation and the allegations which charge an attorney for Icard Merrill attempted to use the conservatorship proceeding to dismiss or abate the Florida litigation.

In response, the defendants argue that even assuming the complaint alleges the first element of abuse of process, the existence of an ulterior motive, the complaint does not allege the second element of the tort. According to the defendants, neither initiation of the conservatorship proceeding nor reference to it in the Florida litigation constitutes an improper act in the use of the process to

-8-

perform a function or obtain a result which the process was not intended by law to effect. We agree.

In Tennessee there are two tort actions which may be brought to obtain redress for the alleged misuse of legal process by another: malicious prosecution and abuse of process. Donaldson v. Donaldson, 557 S.W.2d 60, 62 (Tenn. 1977); Priest v. Union Agency, 174 Tenn. 304, 125 S.W.2d 142, 143 (1939). To make out a claim for malicious prosecution, a plaintiff must show that the defendant maliciously brought a prior suit against him or her without probable cause, and that the prior suit was terminated in favor of the plaintiff. Roberts v. Federal Express Corp., 842 S.W.2d 246, 248 (Tenn. 1992). To establish a claim for abuse of process in Tennessee, as in a majority of other jurisdictions, two elements must be alleged: "(1) the existence of an ulterior motive; and (2) an act in the use of process other than such as would be proper in the regular prosecution of the charge." Priest, 174 Tenn. at 307, 125 S.W.2d at 143 (internal quotations and citations omitted); 1 Am. Jur. 2d Abuse of Process § 5 (1994).

Abuse of process differs from malicious prosecution in that abuse of process lies "for the improper use of process *after* it has been issued, not for maliciously causing process to issue." Priest, 174 Tenn. at 306, 125 S.W.2d at 143 (emphasis added) (internal citations and quotations omitted); see also Restatement (Second) of Torts § 682 (1977) ("The subsequent misuse of the process, though properly obtained, constitutes the misconduct for which the liability is imposed. . . .); Fowler V. Harper et al., The Law of Torts § 4.9 at 4:84 (3rd ed. 1995) ("The action is not for the wrongful bringing of an action or prosecution, but for the improper use, or rather

'abuse,' of process in connection therewith . . . .); W. Page Keeton et al., <u>Prosser and Keeton on the Law of Torts</u> § 121 at 897 (5th ed. 1984) ("[T]he gist of the tort is not commencing an action or causing process to issue without justification, but misusing, or misapplying process justified in itself for an end other than that which it was designed to accomplish [footnote omitted].").

As this Court emphasized in <u>Priest</u>,

> The test as to whether there is an abuse of process is whether the process has been used to accomplish some end which is without the regular purview of the process, or which compels the party against whom it is used to do some collateral thing which he could not legally and regularly be compelled to do.

174 Tenn. at 307, 125 S.W.2d at 144. Abuse of process does not occur unless the "process is perverted, i.e., directed outside of its lawful course to the accomplishment of some object other than that for which it is provided." <u>Id.</u> The mere existence of an ulterior motive in doing an act, proper in itself, is not sufficient. <u>Id.</u> An action for abuse of process cannot be sustained where the process was employed to perform no other function than that intended by law. <u>Id.</u> The bad intent must culminate in an actual abuse of the process "by perverting it to a use to obtain a result which the process was not intended by law to effect." <u>Id.</u> at 308, 125 S.W.2d at 144. "The improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or a club." Keeton et al., <u>supra</u> § 121 at 898.

Mere initiation of a law suit, though accompanied by a malicious ulterior motive, is not abuse of process. See <u>Priest</u>, 174 Tenn. at 308, 125 S.W.2d at 144; see also <u>Oren Royal Oaks Venture v. Greenberg, Bernhard, Weiss & Karma, Inc.</u>,

-10-

728 P.2d 1202,1208 (Cal. 1986) ("[T]he mere filing or maintenance of a lawsuit -- even for an improper purpose -- is not a proper basis for an abuse of process action."); Joseph v. Markovitz, 551 P.2d 571, 575 (Ariz. App. 1976) ("[P]roof of abuse of process requires some act beyond the initiation of a lawsuit."); Hall v. Hollywood Credit Clothing Co., 147 A.2d 866, 868 (D.C. Mun. App. 1959) ("The mere issuance of the process is not actionable, no matter what ulterior motive may have prompted it; the gist of the action lies in the improper use after issuance."); Yoder v. Adriatico, 459 So.2d 449, 450 (Fla. App. 1984) ("[T]he tort of abuse of process is concerned with the improper use of process after it issues."); Brown v. Robertson, 92 N.E.2d 856, 858 (Ind. App. 1950); Brody v. Ruby, 267 N.W.2d 902, 905-06 (Iowa 1978); Friedman v. Dozorc, 312 N.W.2d 585, 594-95 (Mich. 1981); Edmonds v. Delta Democrat Publ'g Co., 93 So.2d 171, 174 (Miss. 1957); Hauser v. Bartow, 7 N.E.2d 268 (N.Y. 1937) ("There must be a further act done outside the use of process -- a perversion of the process."); Clermont Environmental Reclamation Co. v. Hancock, 474 N.E.2d 357, 361 (Ohio App. 1984) ("[I]f one uses process properly, but with a malicious motive, there is no abuse of process . . . ."); Ann-Margaret v. High Soc'y Magazine, Inc., 498 F. Supp. 401, 407 (S.D. N.Y. 1980) ("[A] summons and complaint are not process capable of being abused."); Manufacturers & Jobbers Fin. Corp. v. Lane, 19 S.E.2d 849, 853 (N.C. 1942) ("The gist of an action for abuse of process is the improper use of the process after it has been issued."); Snyder v. Byrne, 770 S.W.2d 65, 67 (Tex. App. 1989); Mullins v. Sanders, 54 S.E.2d 116, 121 (Va. 1949); Batten v. Abrams, 626 P.2d 984, 990 (Wash. App. 1981) ("[T]here must be an act after filing suit using legal process empowered by that suit to accomplish an end not within the purview of the suit."); see generally Keeton et al., supra, § 121 at 898 ( "[T]here is no liability where the

-11-

defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions."); Annotation, 80 A.L.R. 580 (1932).

The requirement of a subsequent improper act in the use of process after the initiation of a law suit is designed to accommodate the freedom of an individual to seek redress in the courts and the interest of a potential defendant in being free from unjustified litigation. See Oren Royal Oaks Venture, 728 P.2d at 1209. The requirement also serves to prevent a chilling effect on claims well-founded in fact and law and asserted for the legitimate purpose of redressing a grievance. Id.; see also Devaney v. Thriftway Marketing Corp., 953 P.2d 277, 285 (N.M. 1997). In light of the important functions served by this requirement, as evidenced by the number of jurisdictions which apply it, we have no hesitation in reaffirming this Court's statement in Priest: abuse of process lies only "for the improper use of process *after* it has been issued, not for maliciously causing process to issue." 170 Tenn. at 306, 125 S.W.2d at 143 (internal citations and quotations omitted) (emphasis added). In so holding, we reject the plaintiff's suggestion that filing an action for an improper "ulterior motive" is alone sufficient to give rise to a claim for abuse of process. See also Oren Royal Oaks Venture, 728 S.W.2d at 1209.

Considering the plaintiff's complaint in light of these governing legal principles, we conclude the trial court and Court of Appeals properly dismissed the plaintiff's complaint for failure to state a claim upon which relief can be granted. The complaint does not allege the second element of abuse of process -- an improper act in the use of process which occurred after the conservatorship petition was filed. Mere filing of the petition is not sufficient. As the Court of Appeals

-12-

recognized, under Tennessee law, any person with knowledge of an individual's need for a conservator may petition the court to appoint a conservator. Tenn. Code Ann. § 34-13-102 (1996 Repl.).

Moreover, despite the plaintiff's assertions to the contrary, an improper act in the use of process did not occur when William Bell and Icard Merrill advised the Florida court of the pendency of the conservatorship proceeding in Tennessee and invoked a Florida statute in support of a motion to dismiss or abate the Florida litigation. These allegations do not charge an action that perverted the process to a use to obtain a result which the process was not intended by law to effect. The Florida statute provided for the suspension of powers of attorney during the pendency proceedings to determine a principal's capacity. See n.2, supra. The litigation in Florida was instituted by Snyder, exercising power of attorney for Frances Bell. The statute potentially could have resulted in a stay of the Florida lawsuit until conclusion of the conservatorship proceeding. Since it was William Bell who filed the conservatorship proceeding, it was appropriate for William Bell to advise the Florida court that he had filed a petition in Tennessee seeking appointment of a conservator for Frances Bell. Because litigation is often costly and because the purpose of a conservatorship proceeding is to supervise, protect, and assist "the person or property or both of a disabled person,"[4] William Bell's request that the Florida litigation be stayed until resolution of the conservator proceeding was appropriate. However, nowhere does the complaint allege that the defendants used the conservatorship proceeding as a "threat" or a "club" to extort

---

[4]Tenn. Code Ann. § 34-11-101(4) (1996 Repl.).

-13-

from the plaintiff an agreement to dismiss or settle the Florida litigation. Merely advising a Florida court of the pendency of the proceeding in conjunction with the statute does not constitute an improper act in the use of process. Accordingly, we conclude that the plaintiff's complaint fails to allege one of the essential elements of abuse of process -- an improper act in the use of process; therefore the complaint fails to state a claim upon which relief can be granted. For the same reason, the complaint also fails to state a claim for conspiracy to abuse process. See Merritt-Chapman & Scott Corp. v. Elgin Coal, Inc., 358 F.Supp. 17, 21 (E.D. Tenn. 1972).

#### CONCLUSION

Because we conclude that the plaintiff's complaint fails to allege one of the essential elements of abuse of process, we affirm the judgment of the Court of Appeals which upheld the trial court's dismissal of the plaintiff's complaint for failure to state a cause of action.

_____
FRANK F. DROWOTA, III,
JUSTICE

**Concur:**
Anderson, C.J.
Birch, Holder, Barker, JJ.