# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### August 29, 2000 Session

## JERRY WORRELL, ET AL. v. ANN WORRELL

### Direct Appeal from the Circuit Court for Crockett County
### No. 2619    L. T. Lafferty, Judge

---

### No. W1999-01786-COA-R3-CV - Filed October 10, 2000

---

This appeal arises from a dispute over insurance proceeds between Nephews, as remaindermen of their Aunt's life estate, and their Aunt, as the life tenant of certain property. The trial court awarded the Aunt sole rights to insurance proceeds obtained after the destruction of that property to the exclusion of the Nephews. The Nephews appeal that ruling as well as the trial court's omission of certain hearsay testimony, and its failure to award them declaratory judgment. We affirm the rulings of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; and Remanded

DAVID R. FARMER, J., delivered the opinion of the court, in which ALAN E. HIGHERS and HOLLY K. LILLARD, J.J., joined.

G. Griffin Boyte, Humboldt, Tennessee, for the appellants, Jerry Worrell, Herbert Worrell and Bobby Sutton.

W. Douglas Sweet, Angela R. Merideth and Clinton J. Simpson, Memphis, Tennessee, for the appellee, Ann Worrell.

### OPINION

In 1991, Ann Worrell's husband, Glen Worrell, died. In his will, Mr. Worrell bequeathed to his wife a life estate in all of his real estate, with the remainder to pass to his nephews, Jerry Worrell, Herbert Worrell, and Bobby Sutton. These nephews filed suit against Mrs. Worrell contesting their uncle's will in several areas not made clear by the record. This suit was eventually settled by the parties. Mrs. Worrell then settled into the home she had shared with her deceased husband, and this matter would have gone no further had nature not intervened.

In 1999, a tornado destroyed this house and several outbuildings on the property. Mrs. Worrell had insured this property through Allstate Insurance in 1998 by the issuance of a policy

solely in her name. Mrs. Worrell consistently paid the full premiums on this policy with her own funds. As per the policy terms, Mrs. Worrell was paid over $56,000 by Allstate Insurance for the damages sustained to the home and the surrounding area after the tornado struck. When Mrs. Worrell expressed a desire to not rebuild her home but instead move elsewhere using the insurance proceeds, Glen Worrell's nephews, as the remaindermen of Mrs. Worrell's life estate, filed suit. These plaintiffs demanded that the insurance proceeds only be used for construction of a new residence to replace the destroyed home and sought a declaratory judgment against Mrs. Worrell.

At trial, the plaintiffs argued that it was the responsibility of a life tenant to insure the property in which she held a life tenancy for the benefit of both herself and any remaindermen. Additionally, the plaintiffs sought to introduce the statements made by Mr. Bobby McLean, a lawyer involved in the settlement of the lawsuit concerning Glen Worrell's will. The plaintiffs stated that Mr. McLean, acting as Mrs. Worrell's attorney, had made several statements which suggested that Mrs. Worrell would insure the property for their benefit. The plaintiffs argued that Mr. McLean assured them that if there were any losses, Mrs. Worrell would use any insurance money to either repair the damage or place the funds in an escrow account for use by the remaindermen upon her death. The trial court ruled this testimony as inadmissible hearsay. In addition, the trial court found that Mrs. Worrell had no responsibility to insure the property for the benefit of the plaintiffs and was entitled to keep all of the insurance proceeds. As such, the court denied the plaintiffs' petition for declaratory judgment. The plaintiffs then filed this appeal.

The issues presented by the appellants, as we perceive them, are as follows:

1.      Is a life tenant of real estate under a duty to insure improvements for casualty loss for the benefit of the remaindermen?

2.      If a life tenant insures property improvements for the full value and there is a total loss, is the life tenant entitled to retain all the insurance proceeds to the exclusion of the remaindermen?

3.      Was the trial testimony of the plaintiffs of Mr. McLean's statements properly rejected as inadmissible hearsay?

4.      Did the trial court err in dismissing the plaintiffs' petition for declaratory judgment?

To the extent that the issues involve questions of fact, our review of the trial court's ruling is *de novo* with a presumption of correctness. *See* Tenn. R. App. P. 13(d). Accordingly, we may not reverse the court's factual findings unless they are contrary to the preponderance of the evidence. *See, e.g., Randolph v. Randolph*, 937 S.W.2d 815, 819 (Tenn. 1996); Tenn R. App. P. 13(d). With respect to the court's legal conclusions, however, our review is *de novo* with no presumption of correctness. *See, e.g., Bell ex rel. Snyder v. Icard, Merrill, Cullis, Timm, Furen and Ginsburg, P.A.*, 986 S.W.2d 550, 554 (Tenn. 1999); Tenn. R. App. P. 13(d).

**Rights of Remaindermen to Insurance Proceeds**

In Tennessee, it has been clearly established that

> [t]here is no legal obligation on the part of [a] life tenant to take out insurance on the interest of the remainderman, and insurance taken out by the life tenant must be shown to have been stipulated or intended to cover the interest of the remainderman, and, unless such fact appears, it will be treated as a contract for personal indemnity to the life tenant, and he will be entitled to the proceeds to the exclusion of the remainderman.

*Bennett v. Featherstone*, 71 S.W. 589, 590 (Tenn. 1902). The plaintiffs have presented no compelling reason to change this policy, and, upon review, we cannot discern one. As such, we answer the first two issues raised by the plaintiffs as follows. First, a life tenant is under no duty to insure improvements for the benefit of any remaindermen. Second, if a life tenant insures improvements for full value, the life tenant may retain all insurance proceeds to the exclusion of any remaindermen.

**Hearsay Testimony**

The Tennessee Rules of Evidence define hearsay as "a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted." Tenn. R. Evid. 801(c). Under these rules, hearsay may be admitted if it meets one of several exceptions, depending on the availability of the declarant. *See* Tenn. R. Evid. 803, 804. The plaintiffs did not articulate any specific hearsay exception under which Mr. McLean's testimony could be admitted. It is thus necessary for the court to examine the hearsay exceptions under the Tennessee Rules of Evidence to see if any can be applied to this case.

Upon examination, it is clear that two exceptions could possibly apply in this case.[1] The first possible hearsay exception is Rule 803(1.2)(D). This rule states "[a] statement offered against a party that is . . . (D) a statement by an agent or servant concerning a matter within the scope of the agency or employment made during the existence of the relationship under circumstances qualifying the statement *as one against the declarant's interest* regardless of declarant's availability." Tenn. R. Evid. 803(1.2)(D) (emphasis added). The record does not present any evidence that the statement by Mr. McLean, as the declarant, would be against his interests. Indeed, we are hard pressed to discover how Mr. McLean could have any interest in Mrs. Worrell's future plans to purchase insurance. As such, it is clear he could make no statement against *his own interests* during the settlement conference. Thus, it is clear that this exception does not apply.

---

[1] The Tennessee Rules of Evidence have different exceptions to hearsay if the declarant is unavailable. *See* Tenn. R. Evid. 804. No evidence has been presented by the plaintiffs that Mr. McLean was unavailable to testify and none is included in the record. As such, this court will not consider any of the hearsay exceptions under Rule 804.

Under the second possible hearsay exception, the statements of Mr. McLean could possibly be admitted under rule 803(1.2)(C). That rule states, "[a] statement offered against a party that is . . . (C) a statement by a person authorized by the party to make a statement concerning the subject" may be admitted. Tenn. R. Evid. 803(1.2)(C). The evidence presented at trial was that Mr. McLean represented Mrs. Worrell during the negotiations to settle the will contest brought by the plaintiffs.[2] Mr. McLean operated as her "agent[] and [had] *prima facie* authority to speak for [her] through pleadings and negotiations." *Simmons v. O'Charley's, Inc.*, 914 S.W.2d 895, 902 (Tenn. Ct. App. 1995). Thus, Mr. McLean's statements should have been admitted *if he made the statements while operating within the scope of his authority.*

Authority is defined as "[t]he lawful delegation of power by one person to another. . . [the] agent . . . [can] affect legal relations of [the] principal by acts done in accordance with [the] principal's manifestations of consent to [the] agent." *Black's Law Dictionary* 121 (5th ed. 1979). It is clear from this defination that an agent can only bind the principal when acting within the principal's "manifestations of consent." *Id.* Thus, a determination of what authority Mrs. Worrell gave Mr. McLean to settle the will contest, would determine if she was bound by his statements. If she was bound by his statements, then Rule 803(1.2)(C) would apply and Mr. McLean's testimony was improperly excluded.

What was the scope of Mr. McLean's authority? Upon our review of the record, we are unable to ascertain the answer to this question. Nothing in the record provides details about the settlement negotiations during which Mr. McLean's statements were made. As such, we are unable even to speculate what authority Mrs. Worrell provided her attorney. This inability to determine the scope of Mr. McLean's authority and thus the admissibility of his statements, does, by necessity, turn our attention to a related matter.

### Declaratory Judgment

In Tennessee, "[i]t may be stated as a general rule, that the burden of proof is upon the plaintiff to show that conditions exist to justify the court in exercising its discretionary powers to grant declaratory relief pursuant to the declaratory judgment statute." *Blake v. Plus Mark, Inc.*, 952 S.W.2d 413, 417 (Tenn. 1997) (citations omitted). If the plaintiffs fail to meet this burden, then they are not entitled to declaratory relief. "The pleading party has the burden of proving that the controversy is justiciable and of establishing the facts need to bring an action." *Id.* at 416-17. "[A]n applicant for a declaratory judgment has the burden of showing that present justiciable controversy exists, and if this fact is not shown then a cause of action for declaratory relief is not established." *Id.* at 417 (citations omitted).

---

[2]Mrs. Worrell clearly testified during the trial that she was represented by Mr. McClain. While she presented a post trial affidavit stating that this statement was incorrect, this affidavit was not evidence at trial and, thus cannot be considered by this court.

The plaintiffs' have failed in this case to meet the burden of proof required for a declaratory judgment. Without conclusive proof in the record, it is impossible for this court to determine the extent of Mr. McLean's authority to bind Mrs. Worrell. If Mr. McLean had no authority to bind Mrs. Worrell in this matter, then Rule 803(1.2)(C) would not apply. If Mr. McLean's statements are excluded, it is clear for the reasons already discussed above that Mrs. Worrell is entitled to use the insurance proceeds as she desires. As the plaintiffs have failed to meet their burden of proof in this case, we must find that the trial court acted within its "sound discretion" in its dismissal of the plaintiffs' petition. As such, we find that the trial court did not err in dismissing the plaintiffs' petition for declaratory judgment.

## Conclusion

Based on the foregoing conclusions, the judgment of the trial court is affirmed. Costs on appeal are assessed against the appellants, Jerry Worrell, Herbert Worrell, and Bobby Sutton, and their surety, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE