# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### NOVEMBER 8, 2007 Session

## SAMUEL D. LEGGETT, ET AL. V. DUKE ENERGY CORPORATION, ET AL.

### Direct Appeal from the Chancery Court for Fayette County
### No. 13847      Martha B. Brasfield, Chancellor

---

### No. W2007-00788-COA-R3-CV  - Filed October 29, 2008

---

Plaintiffs sued natural gas companies under the Tennessee Trade Practices Act, Tenn. Code Ann. § 47-25-101, *et seq.*, alleging that the natural gas companies conspired unlawfully to increase the wholesale price of natural gas. The trial court granted the natural gas companies' motion to dismiss on the basis of federal preemption. We reverse and remand for further proceedings.

### Tenn. R. App. P. 3; Judgment of the Chancery Court Reversed and Remanded

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, SP. J., joined, and W. FRANK CRAWFORD, J., did not particpate.

Alan G. Crone, James J. Webb, Jr., Memphis, TN; John S. Wilder, Sr., Somerville, TN; Thomas H. Brill, Mission Hills, KS, for Appellants

Paul G. Summers, Lela M. Hollabaugh, Nashville, TN; Joel B. Kleinman, Lisa M. Kaas, Washington, D.C.; Jef Feibleman, Memphis, TN; Amelia a. Fogleman, Tulsa, OK; Jeffrey M. Shohet, Mark H. Hamer, San Diego, CA; Cannon F. Allen, Brian s. Faughnan, Memphis, TN, for Appellees

### OPINION

### Facts and Procedural History[1]

This appeal arises under the Tennessee Trade Practices Act, T.C.A. § 47-25-101, *et seq.*, and involves a class action antitrust lawsuit. On January 28, 2005, the Appellants, Samuel D. Leggett, Frank H. Colvett, Jr., Bing's Stop & Shop, and Wolfe River Café, on behalf of themselves and other individuals and businesses similarly situated (hereinafter, the "Tennessee Purchasers" or

---

[1] This case originally was assigned to Judge W. Frank Crawford. Judge Crawford passed away on April 17, 2008. The case was subsequently re-assigned.

"Plaintiffs"), filed a Petition for Damages against the Appellees, Duke Energy Corporation, Duke Energy Trading and Marketing Company, LLC, El Paso Corporation, El Paso Merchant Energy, LP, American Electric Power Company, AEP Energy Services, Inc., CMS Energy Corporation, CMS Marketing Services & Trading Company, CMS Field Services, Dynegy Marketing & Trade, ONEOK Inc., ONEOK Marketing and Trading Company, LP, The Williams Companies, Inc., Williams Energy Marketing & Trading, Williams Merchant Services Company, Inc., Reliant Energy, Inc., and Reliant Energy Services, Inc., (hereinafter, "the Natural Gas Companies").

The Petition for Damages alleges that, from January 1, 2000, through October 31, 2002, the Natural Gas Companies conspired unlawfully to increase the wholesale price of natural gas. According to the Petition, reporting firms use reported data from the natural gas market, including price and volume information, to compile and publish indices of natural gas prices, such as *Gas Daily* and *Inside FERC Gas Market Report ("IFERC")*. Participants in the natural gas market rely on these indices to determine the market price for natural gas. The Plaintiffs allege that the Natural Gas Companies engaged in a pervasive and widespread scheme to artificially inflate wholesale natural gas prices by knowingly reporting false information to the reporting firms, such as "trades that did not occur and certain actual trades in which the price and/or volume was not reported accurately[.]" Plaintiffs allege that during the relevant time period, the Natural Gas Companies reported thousands of natural gas trades to *Gas Daily* and *IFERC* with false or misleading information in an attempt to skew the price indices and benefit their own trading positions. According to Plaintiffs, the Natural Gas Companies also engaged in "wash trades" and "churning activities" to affect the market price of natural gas.

The Tennessee Purchasers further assert that the Natural Gas Companies' conspiracy directly affected the natural gas prices in Tennessee. Plaintiffs claim they indirectly purchased natural gas from the Natural Gas Companies through local utility companies, which had purchased the natural gas at artificially inflated prices from the Natural Gas Companies. Plaintiffs claim the local utility companies then "passed on" the artificially inflated prices when they resold the gas to the Tennessee Purchasers. Pursuant to the full consideration damages remedy of the Tennessee Trade Practices Act, T.C.A § 47-25-106, the Tennessee Purchasers seek as reimbursement that portion of the sales price that was passed on to them due to the Natural Gas Companies' alleged violation of antitrust laws.

Many similar lawsuits were filed in other states, in which users of natural gas claimed to have paid excessive amounts for natural gas between 2000 and 2002. The Plaintiffs' case was removed to federal court, where it was assigned by a Multi-District Litigation Panel to the United States District Court, District of Nevada ("the MDL court"). The case was later remanded to the Chancery Court of Fayette County, Tennessee.[2] While before the MDL court, the Natural Gas Companies filed a Motion to Dismiss for Failure to State a Claim, which they renewed after the case was remanded to state court. On March 6, 2007, the trial court found that federal law preempted the state action

---

[2] One of the motions filed by the Natural Gas Companies in the trial court states that the MDL court's order remanding the case only addressed federal subject matter jurisdiction.

and granted the Natural Gas Companies' motion to dismiss. The Tennessee Purchasers timely filed their Notice of Appeal on April 4, 2007.

## Issues

On appeal, the Appellants raise the following issue:

Whether the Chancery Court erred in dismissing the case by ruling that it lacked subject matter jurisdiction due to federal preemption.

Appellees raise two (2) additional issues, as stated in their brief:
1. Whether the doctrine of federal preemption bars Appellants' claims under the Tennessee Trade Practices Act, Tenn. Code. Ann. §§ 47-25-101, *et seq.*, where the Natural Gas Act of 1938, 15 U.S.C. §§ 717, *et seq.*, ("NGA"), and the regulations of the Federal Energy Regulatory Commission ("FERC") control (a) the lawfulness of Appellees' conduct in the interstate market for natural gas sold to utilities for resale, and (b) the rates that local utilities paid for natural gas they purchased in the interstate markets to resell to their customers.

2. Whether the "filed rate doctrine" bars the Chancery Court from granting the relief that Appellants seek because to grant that relief requires the court to determine what rates "should have prevailed" in the interstate wholesale natural gas market in which Appellants' local gas utilities purchased the gas they resold to Appellants.

## Standard of Review

The standard of review for determining whether the trial court properly granted a motion to dismiss is as follows:

A **Tenn. R. Civ. P. 12.02(6)** motion to dismiss for failure to state a claim upon which relief can be granted tests only the legal sufficiency of the complaint, not the strength of a plaintiff's proof. Such a motion admits the truth of all relevant and material averments contained in the complaint, but asserts that such facts do not constitute a cause of action as a matter of law. In ruling upon a motion to dismiss, courts should construe the complaint liberally in favor of the plaintiff, taking all allegations of fact as true. The motion to dismiss should be denied unless it appears that the plaintiff can prove no set of facts in support of her claim that would entitle her to relief. In considering this appeal from the trial court's grant of the defendants' motion to dismiss, we take all allegations of fact in the plaintiff's complaint as true, and review the lower courts' legal conclusions de novo with no presumption of correctness. **Tenn. R. App. P. 13(d)**.

***Bell v. Icard***, 986 S.W.2d 550, 554 (Tenn. 1999).

## Discussion

Before we reach the merits of the issues before us, we first address the issue of standing. The Tennessee Purchasers have sued only under the Tennessee Trade Practices Act ("TTPA") and have not attempted to sue under the federal antitrust laws. While the purpose of the federal antitrust statutes is to protect competition and commerce, the state act's purpose is to protect commerce and the consuming public. Although indirect purchasers are barred from bringing an action under federal antitrust laws, we note that, in Tennessee, indirect purchasers may bring an action for an injury caused by an alleged violation of the TTPA.[3] *See, e.g.*, ***Illinois Brick Co. v. Illinois***, 431 U.S. 720, 747 (1977); ***Freeman Indus., LLC v. Eastman Chem. Co.***, 172 S.W.3d 512, 517 (Tenn. 2005).

We now turn to an examination of the relevant federal law. The Natural Gas Act ("NGA"), 15 U.S.C.A. § 717, *et seq.*, provides the framework for federal regulation of the natural gas industry. ***E. & J. Gallo Winery v. EnCana Corp.***, 503 F.3d 1027, 1034 (9th Cir. 2007). The Federal Energy Regulatory Commission ("FERC") exercises authority over the rates in natural gas sales subject to the NGA. ***Schneidewind v. ANR Pipeline Co.***, 485 U.S. 293, 301 (1988). The NGA provides that rates in natural gas transactions subject to the NGA's scope "shall be just and reasonable." 15 U.S.C.A. § 717c(a). FERC has the sole authority to decide whether rates are reasonable in sales subject to its jurisdiction. ***E. & J. Gallo Winery***, 503 F.3d at 1034 (citing *Arkansas Louisiana Gas Co. v. Hall*, 453 U.S. 571, 577 (1981)). However, not all natural gas sales are subject to FERC's jurisdiction.

---

[3] Tennessee Code Annotated section 47-25-101 provides:

All arrangements, contracts, agreements, trusts, or combinations between persons or corporations made with a view to lessen, or which tend to lessen, full and free competition in the importation or sale of articles imported into this state, or in the manufacture or sale of articles of domestic growth or of domestic raw material, and all arrangements, contracts, agreements, trusts, or combinations between persons or corporations designed, or which tend, to advance, reduce, or control the price or the cost to the producer or the consumer of any such product or article, are declared to be against public policy, unlawful, and void.

Tennessee Code Annotated section 47-25-102 provides:

Any arrangements, contracts, and agreements that may be made by any corporation or person, or by and between its agents and subagents, to sell and market its products and articles, manufactured in this state, or imported into this state, to any producer or consumer at prices reduced below the cost of production or importation into this state, including the cost of marketing, and a reasonable and just marginal profit, to cover wages or management, and necessary incidentals, as is observed in the usual course of general business, and the continuance of such practice under such contracts and arrangements for an unreasonable length of time, to the injury of full and free competition, or any other arrangements, contracts, or agreements, by and between its agents and subagents, which tend to lessen full and free competition in the sale of all such articles manufactured and imported into the state, and which amount to a subterfuge for the purpose of obtaining the same advantage and purposes are declared to be against public policy, unlawful, and void.

The provisions of the NGA apply "to the transportation of natural gas in interstate commerce, to the sale in interstate commerce of natural gas for resale for ultimate public consumption . . . , and to natural-gas companies engaged in such transportation or sale, and to the importation or exportation of natural gas in foreign commerce and to persons engaged in such importation or exportation." 15 U.S.C.A. § 717(b). The NGA does not apply to any other transportation or sale of natural gas, or to the local distribution of natural gas, or to the facilities used for such distribution, or to the production or gathering of natural gas. *Id.* In sum, the statute excludes retail sales of natural gas from FERC's rate-setting jurisdiction by clearly distinguishing sales "for resale" and direct sales for consumptive uses. *E. & J. Gallo Winery*, 503 F.3d at 1036 (quoting *Panhandle E. Pipe Line Co. v. Pub. Serv. Comm'n of Ind.*, 332 U.S. 507, 517 (1947)). However, not all sales "for resale" are subject to FERC's jurisdiction either. Congress deregulated much of the natural gas industry with the passage of the Natural Gas Policy Act ("NGPA") in 1978, 15 U.S.C.A. §§ 3301-3432, and the Natural Gas Wellhead Decontrol Act of 1989 ("WDA"). Congress completely eliminated FERC's authority to set prices at the wellhead by removing "first sales" of natural gas from FERC's rate-setting jurisdiction.[4] "Despite the complexity of the statutory definition of first sales,[5] first sales are, in essence, merely sales of natural gas that are not preceded by a sale to an

_____

[4] 15 U.S.C.A. § 3431 provides:

(a) Jurisdiction of the Commission under the Natural Gas Act
 (1) Sales
  (A) Application to first sales
       For purposes of section 1(b) of the Natural Gas Act [15 U.S.C.A. § 717(b)], the
       provisions of the Natural Gas Act [15 U.S.C.A. § 717 et seq.] and the jurisdiction
       of the Commission under such Act shall not apply to any natural gas solely by
       reason of any first sale of such natural gas.
. . . .

[5] 15 U.S.C.A. § 3301(21) defines "first sale" as follows:

(A) General rule

The term "first sale" means any sale of any volume of natural gas--

(i) to any interstate pipeline or intrastate pipeline;
(ii) to any local distribution company;
(iii) to any person for use by such person;
(iv) which precedes any sale described in clauses (i), (ii), or (iii); and
(v) which precedes or follows any sale described in clauses (i), (ii), (iii), or (iv) and is defined by the
Commission as a first sale in order to prevent circumvention of any maximum lawful price established
under this chapter.

(B) Certain sales not included

Clauses (i), (ii), (iii), or (iv) of subparagraph (A) shall not include the sale of any volume of natural
gas by any interstate pipeline, intrastate pipeline, or local distribution company, or any affiliate
thereof, unless such sale is attributable to volumes of natural gas produced by such interstate pipeline,
intrastate pipeline, or local distribution company, or any affiliate thereof.

interstate pipeline, intrastate pipeline, local distribution company, or retail customer." ***E. & J. Gallo Winery***, 503 F.3d at 1037. In other words, sales of natural gas by pipelines, local distribution companies, and their affiliates are not first sales unless these entities are selling gas of their own production. ***Id.*** (citing 15 U.S.C.A. § 3301(21)(B)). Also, all sales of Canadian and Mexican natural gas are first sales pursuant to the Energy Policy Act of 1992, 15 U.S.C.A. § 717b(b). In summary, FERC does not have authority over prices in retail sales, or first sales in the wholesale market.

It is undisputed that Plaintiffs were retail purchasers of natural gas. Because Plaintiffs did not purchase natural gas "for resale," their purchases were not within the regulation of the NGA. However, Plaintiffs did not name the local utility companies as defendants in their suit. The Tennessee Purchasers' claims are against the Natural Gas Companies, who did sell natural gas "for resale." Plaintiffs' claims are based on the theory that the rates they paid to the local utility companies were unfairly high because the local utility companies "passed on" the higher rates they paid to the Natural Gas Companies, based on the indices that were artificially inflated due to illegal practices. As noted above, many similar lawsuits were filed in other states by users of natural gas who claimed to have paid excessive amounts for natural gas between 2000 and 2002. Nearly all of these similar lawsuits were brought in or removed to federal court, where they were centralized by the Judicial Panel on Multidistrict Litigation before Chief Judge Philip M. Pro of the United States District Court for the District of Nevada. The MDL court dismissed several of these related cases prior to discovery based on the "filed rate doctrine." In the present case, the Natural Gas Companies cited the MDL court's decisions and argued that the trial court should dismiss Plaintiff's case "on the same basis" pursuant to Tennessee Rule of Civil Procedure 12.02. The trial court granted their motion to dismiss. On appeal, the Natural Gas Companies maintain that dismissal was proper because the Tennessee Purchasers are challenging wholesale, market-based rates that were authorized by FERC, so that Plaintiffs' claims are barred by two legal principles: (1) the filed rate doctrine, and (2) the principles of federal preemption. Specifically, the Natural Gas Companies contend that FERC is vested with plenary jurisdiction over all sales for resale of natural gas in interstate commerce, thereby preempting state jurisdiction over the subject matter of the Tennessee Purchasers' suit. The Natural Gas Companies also argue that the monetary relief sought by the Tennessee Purchasers' would require the trial court to perform a calculation of the reasonableness of the market rate compared to the rate that would have occurred absent the alleged misconduct. This, they contend, would require the trial court to substitute its own judgment in determining a fair rate, in violation of well-established legal principles, and in contravention of FERC's exclusive jurisdiction.

Since Plaintiffs filed their appeal in this case, the Ninth Circuit Court of Appeals considered these issues in depth when reviewing several of the MDL court's decisions and other similar cases. The Ninth Circuit thoroughly discussed the filed rate doctrine and the underlying principles of preemption in ***E. & J. Gallo Winery v. EnCana Corporation***, 503 F.3d 1027 (9th Cir. 2007). In that case, a plaintiff alleged that the defendants, a natural gas supplier and its affiliate, conspired with others to inflate the price of natural gas by, among other things, misreporting natural gas prices to

the indices and engaging in "wash trades."[6]  *Id.* at 1032.  The plaintiffs alleged "federal and state antitrust actions and state law damage claims arising under various statutes . . . and under a theory of unjust enrichment."  *Id.*  The defendants moved for summary judgment on the basis of the filed rate doctrine and associated principles of federal preemption, claiming that the plaintiff's claim would require a court to determine a hypothetical fair rate in the wholesale natural gas market.  *Id.*  The district court denied the defendants' motion but certified its order for interlocutory appeal.  *Id.*

On appeal, the Ninth Circuit began by explaining that "[t]he filed rate doctrine and associated principles of federal preemption bar challenges under state law and federal antitrust laws to rates set by federal agencies."  *Id.* at 1033.  In other words, state law, and some federal law, such as antitrust law, may not be used to invalidate a filed rate, nor to assume a rate would be charged other than the rate adopted by the federal agency in question.  *Id.* (citing *Transmission Agency of N. Cal. v. Sierra Pac. Power Co.*, 295 F.3d 918, 929 (9th Cir. 2002)).  The filed rate doctrine arose from courts' interpretations of federal statutes that give federal agencies exclusive jurisdiction to set rates for certain utilities, and it has been extended to the NGA.  *Id.*  Consistent with the logic of the filed rate doctrine, the Supremacy Clause precludes a state court from awarding damages that, in effect, give the plaintiff a rate different from the rate filed with and approved by a federal agency.  *Id.* at 1034.  "Put succinctly, 'when the filed rate doctrine applies to state regulators, it does so as a matter of federal pre-emption through the Supremacy Clause.'"  *Id.* at 1035 (quoting *Entergy La., Inc. v. La. Pub. Serv. Comm'n*, 539 U.S. 39, 47 (2003)).  The Ninth Circuit summarized by stating,

> From the foregoing review of the filed rate doctrine and associated principles of federal preemption, we can derive the following principle: to the extent Congress has given FERC authority to set rates under the NGA and FERC has exercised that authority, such rates are just and reasonable as a matter of law and cannot be collaterally challenged under federal antitrust law or state law.

*Id.*  The filed rate doctrine is based on the principle that the rates authorized by FERC are just and reasonable as a matter of law, and cannot be the basis of a damage action.  *Id.* at 1039.  The underlying issue, the Court stated, was whether the plaintiff was challenging FERC-authorized rates.  *Id.* at 1035.

As previously noted, FERC has the sole authority to decide whether rates are reasonable in natural gas sales subject to its jurisdiction.  *E. & J. Gallo Winery*, 503 F.3d at 1034 (citing *Arkansas Louisiana Gas Co. v. Hall*, 453 U.S. 571, 577 (1981)).  However, "Congress has limited FERC's jurisdiction over wholesale sales to those wholesale sales (not including sales of Canadian and Mexican natural gas) that are preceded by a sale to an interstate pipeline, intrastate pipeline, local distribution company, or retail customer."  *Id.* at 1038.  In applying the filed rate doctrine and principles of preemption to the NGA, the Ninth Circuit reached the following conclusions:

---

[6] The court explained that "[a] wash trade is a transaction where two parties simultaneously buy and sell the same quantity of natural gas at the same price and on the same day," which creates a false appearance of demand for and short supply of natural gas.  *E. & J. Gallo Winery*, 503 F.3d at 1032, n.3.

First, federal preemption of state damage claims applies to the natural gas arena[.] A challenge to market-based natural gas rates established pursuant to FERC's blanket market certificate would require a court to reconsider natural gas rates that FERC had already determined to be reasonable. Because Congress preempted the field by giving FERC exclusive jurisdiction over such rates, challenges to such rates are barred by field preemption[.]

Second, permitting a state court to grant an aggrieved party "a refund" in natural gas rates under FERC jurisdiction would create a conflict with FERC's authority to approve market-based rates, and thus is similarly preempted by conflict preemption. Such a state-ordered refund may also conflict with the authority FERC has to order retroactive refunds if the conduct of sellers under FERC's jurisdiction violated the terms of the market-based certificates.

The Filed Rate Doctrine bars federal antitrust claims in the natural gas arena just as it does in the electricity arena. Because FERC is implementing a market-based rate regime for natural gas, a court action challenging rates subject to FERC's jurisdiction under federal antitrust law would violate the scope of authority given to FERC by Congress.

Finally, we can also conclude that FERC exercised its statutory authority under the NGA to approve natural gas rates, so that the underlying premise of the Filed Rate Doctrine remains applicable. . . . [T]he Filed Rate Doctrine continues to preempt any rate-setting activities by the courts and bar federal antitrust claims under the Filed Rate Doctrine.

. . . .

We conclude, therefore, for purposes of a challenge to market-based rates for natural gas transactions under FERC's jurisdiction, the principles of the Filed Rate Doctrine are applicable. This means that the market-based rate for natural gas transactions under FERC's jurisdiction are FERC-authorized rates, and cannot be the basis of a federal antitrust or state damage action.

*Id.* at 1041-43 (citations and footnote omitted). In applying these principles, the Ninth Circuit concluded that the plaintiff could not challenge the retail rates it paid by claiming that FERC-authorized rates were unfair or the result of misconduct. *Id.* at 1044. Therefore, to the extent the plaintiff's challenge to the indices was a challenge to that portion of the indices including market-based wholesale rates subject to FERC's jurisdiction, the claim was barred by the filed rate doctrine. *Id.* However, based on the record before it, the Court could not determine whether the indices reflected non-FERC-authorized rates, or whether the manipulation of those non-FERC-authorized rates impacted the rates paid by the plaintiff. *Id.*, n.13. The defendant was not entitled to summary judgment because it had not carried its burden of establishing that all the transactions comprising the indices were FERC-approved transactions, or otherwise shielded from challenge. *Id.* at 1045. Presumably, the Court noted, "at least some of the transactions included in the indices [were] not subject to FERC's jurisdiction, and thus would be subject to challenge by [the plaintiff]." *Id.* First sales transactions were potentially included in the indices, which are outside of FERC's jurisdiction. *Id.* Furthermore, the allegedly misreported rates and the rates reported for trades that did not occur would not be subject to FERC approval. *Id.*

In conclusion, the Ninth Circuit held that, to the extent the indices were comprised of rates that were not FERC-authorized rates, the filed rate doctrine did not bar the plaintiff's claim that such rates were unfair and led to unfair retail rates. *Id.* at 1048. The filed rate doctrine did prevent the plaintiff from challenging FERC-authorized rates that were incorporated into the indices. *Id.* The Court noted that its holding could raise complexities in resolving these types of cases, but it stated that it reached the necessary conclusion. *Id.*

The Ninth Circuit subsequently used this same reasoning to reverse two decisions from the MDL court, in which the MDL court had granted natural gas companies' motions to dismiss based on the filed rate doctrine. *See In re Western States Wholesale Natural Gas Antitrust Litigation, ("Abelman")*, 248 Fed. App'x 821 (9th Cir. 2007); *In re Western States Wholesale Natural Gas Antitrust Litigation, ("Texas-Ohio")*, 243 Fed. App'x 328 (9th Cir. 2007).

Based on our review of the current law, we are persuaded by the Ninth Circuit's reasoning in *E. & J. Gallo Winery v. EnCana Corporation*, 503 F.3d 1027 (9th Cir. 2007), and find that it controls the issues in this case.[7] In reviewing a motion to dismiss, we construe the complaint liberally in favor of the plaintiff, taking all allegations of fact as true. *Bell v. Icard,* 986 S.W.2d 550, 554 (Tenn. 1999). A motion to dismiss should be denied unless it appears that the plaintiff can prove no set of facts in support of the claim that would entitle it to relief. *Id.* Here, the Tennessee Purchasers alleged in their complaint that the Natural Gas Companies sold deregulated natural gas, including first sales, and their own or their affiliates' production. They also alleged that the Natural Gas Companies reported false information to the indices, including information about trades that did not occur. Taking these statements as true, as we are required to do, we conclude that the trial court erred in granting the motion to dismiss based on the filed rate doctrine and related principles of preemption, for the reasons set forth in *E. & J. Gallo Winery*.

Based on the foregoing discussion, we find that the trial court erred in concluding that all of the Tennessee Purchasers' claims were preempted by federal law. As discussed above, some of the transactions may be subject to FERC's exclusive jurisdiction, some may not be. From the record before us, it is impossible to make a definitive determination. Because FERC's jurisdiction is predicated upon the nature of each transaction, it was premature to dismiss the case at this early stage of the lawsuit.

## Conclusion

---

[7] To the extent the Natural Gas Companies present additional arguments on appeal, regarding statutory construction and also the doctrine of preemption as it relates to "first sales," we find their arguments without merit for the reasons discussed by the Ninth Circuit in *E. & J. Gallo Winery*, 503 F.3d at 1046-47. In particular, we agree with the Ninth Circuit's conclusion that state antitrust and fair competition laws complement, rather than undermine, Congress' intent to move toward a less regulated natural gas market. *Id.* at 1046. Therefore, we find this case distinguishable from *Transcontinental Gas Pipe Line Corp. v. State Oil and Gas Bd. of Mississippi*, 474 U.S. 409, 422 (1986), where the regulations at issue "directly undermine[d] Congress' determination that the supply, the demand, and the price of high-cost gas be determined by market forces."

At this stage in the proceedings, it appears that at least some of the conduct challenged by the Tennessee Purchasers is not approved by FERC; thus, Plaintiffs' claims should not have been dismissed based on the filed rate doctrine and the underlying principles of federal preemption. Plaintiffs are entitled to an opportunity to develop the record on these issues on remand.

For the foregoing reasons, we reverse the judgment of the trial court, and remand for such further proceedings as may be necessary, consistent with this Opinion. Costs of this appeal are assessed against the Appellees, Duke Energy Corporation, Duke Energy Trading and Marketing Company, LLC, El Paso Corporation, El Paso Merchant Energy, LP, American Electric Power Company, AEP Energy Services, Inc., CMS Energy Corporation, CMS Marketing Services & Trading Company, CMS Field Services, Dynegy Marketing & Trade, ONEOK Inc., ONEOK Marketing and Trading Company, LP, The Williams Companies, Inc., Williams Energy Marketing & Trading, Williams Merchant Services Company, Inc., Reliant Energy, Inc., and Reliant Energy Services, Inc., for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.