Michael SNYDER, Appellant,

v.

Roger P. BYRNE, Appellee.

No. 13–88–431–CV.

Court of Appeals of Texas, Corpus Christi.

April 20, 1989.

Rehearing Denied June 1, 1989.

---

**2.** Approved as to form by counsel for both parties.

**3.** We express no opinion on Rose's first through fourth points of error.

William N. Ambler, David Hughes, Markey, Hughes & Steiner, Corpus Christi, for appellant.

Michael G. Terry, William A. Dudley, Edwards & Perry, Corpus Christi, for appellee.

Before NYE, C.J., and SEERDEN, and BENAVIDES, JJ.

## OPINION

NYE, Chief Justice.

Michael Snyder brought suit against appellee Roger Byrne, alleging illegal use of judicial process. The trial court, pursuant to the jury answers, ordered that Snyder take nothing from his suit. By six points of error Snyder complains of jury misconduct, the jury charge, and factual insufficiency of the evidence.

Michael Snyder, representing Snyder Contracting Limited (Limited), entered into construction agreements with Drs. Byrne and Coniglio regarding construction of the Dental Speciality Center Condominum. As Limited worked on the foundation, it received, per draw requests, progress payments for June and July. In August, Dr. Byrne refused to pay progress payments until the foundation was completed. On October 21, 1983, Limited shut down all operations and dissolved. Subsequently, Drs. Byrne and Coniglio filed a statement of facts with the police alleging that the money they paid Limited for materials per the draws was not paid by Limited to the suppliers, leaving them with over $30,000.00 in outstanding bills.

A police investigation ensued, appellant was arrested, and an indictment was entered by the grand jury against Snyder for misapplication of fiduciary funds. During the pendency of the case, the assistant district attorney discussed plea bargaining alternatives; however, the case was eventually dismissed for lack of sufficient evidence.

Appellant complains that the jury's negative findings to the questions concerning

whether Roger Byrne misused process, made a false statement, and incurred damages are against the great weight and preponderance of the evidence. In reviewing a point of error asserting that a finding is "against the great weight and preponderance" of the evidence, we must consider and weigh all the evidence. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986). If a jury finding is so contrary to the great weight and preponderance of the evidence as to be manifestly unjust, the point should be sustained, regardless of whether there is some evidence to support it. *Watson v. Prewitt,* 159 Tex. 305, 320 S.W.2d 815, 816 (1959); *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

■ The elements of an action for abuse of process are (1) that the defendant made an illegal or improper use of the process, and (2) that the defendant had an ulterior motive or purpose in exercising such illegal or improper use of process, and (3) that damage resulted to the plaintiff from the irregularity. *Martin v. Trevino,* 578 S.W. 2d 763, 769 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.); *Tandy Corp. v. McGregor,* 527 S.W.2d 246, 249 (Tex.Civ. App.—Texarkana 1975, writ ref'd n.r.e.). "The gravamen of an action for abuse of process is the misuse of process, whether properly or improperly obtained, for any purpose other than that which it was designed to accomplish.... The mere procurement or issuance with a malicious intent or without probable cause is not actionable. This is so because there must be an improper use of the process after its issuance." *Martin,* 578 S.W.2d at 769; *Blackstock v. Tatum,* 396 S.W.2d 463, 468 (Tex.Civ.App.—Houston 1965, no writ).

■ The appellant contends the following facts showed Dr. Byrne's motive to use the criminal process to collect a debt:

1) the prosecutor offered to dismiss the case if appellant paid $10,000 restitution,

2) Dr. Byrne persistently called the District Attorney's Office,

3) Dr. Byrne had threatened to prosecute appellant, and

4) Dr. Byrne made a false statement of fact to the police.

Regarding the $10,000 offer made by the District Attorney's office, Jeanie Coltrin, a former assistant district attorney who worked on the case, testified that she believed a crime was committed but that she had tried to negotiate with Snyder's lawyer a few times to avoid the costs and necessities of a trial. G. Gerald Miller, a criminal law specialist who represented Snyder, testified that initially the assistant district attorney offered ten years probation and restitution but that he refused it because she did not show him any evidence that Snyder had committed a crime. He said its not unusual for restitution to be made a term of probation with the money going to the victim. He testified that the assistant district attorney later offered to dismiss the case if Snyder would come up with $10,000 to pay the victims. Miller testified that he had seen the State make similar offers and that it indicated to him the State's case should be dismissed.

Miller also testified that the assistant district attorney indicated to him that Dr. Byrne called her regularly. Miller said the prosecutor told him that Drs. Byrne and Coniglio were bothering her and that this was a case that she really had to get resolved.

Regarding evidence that Dr. Byrne had threatened to prosecute Snyder, Johnny White, the architect for the Specialty Center who authorized the payments to be made by Drs. Coniglio and Byrne to Limited, testified about a meeting he had with Dr. Byrne in early October 1983. At the meeting, Dr. Byrne told him that Limited was having problems and "that Michael Snyder was going to be in trouble because bills were owed on the job." White said that Dr. Byrne had told him that White and Snyder would be prosecuted if the outstanding bills were not paid. The evidence was conflicting as to whether White understood Dr. Byrne to mean civil or criminal prosecution.

Regarding appellant's assertion that Dr. Byrne's statement was false, the evidence at trial was conflicting. On the one hand,

there was evidence that Dr. Byrne had paid the draw requests to Limited on the representation that certain bills would be paid, but that once Limited went out of business, it was discovered that numerous bills supposedly covered by the draw were never paid. On the other hand, there was evidence presented that the invoices that were outstanding were for expenses incurred after the time covered by the draw. Dr. Byrne testified that the statement he made to the police was truthful.

It is the province of the jury to judge the credibility of witnesses, to accept or reject all or part of the testimony and to resolve any conflicts and inconsistencies. *Sifuentes v. Texas Employers' Ins.*, 754 S.W. 2d 784, 786 (Tex.App.—Dallas 1988, no writ). We have reviewed all the evidence and find that the jury's answers were not contrary to the great weight of the evidence so as to be clearly wrong or unjust. Points of error four and five are overruled.

By the first point of error, appellant contends the trial court erred in overruling his motion for new trial based on jury misconduct. Appellant asserts that the alleged jury misconduct occurred when one juror, Ms. Williams, responded to questions during voir dire in an untruthful and evasive manner, hiding her prejudice against the plaintiff.

■ To obtain a new trial based on jury misconduct, the movant must prove 1) misconduct occurred; 2) it was material misconduct, and 3) based on the record as a whole, the misconduct probably resulted in harm to the movant. *Baker Marine Corp. v. Weatherby Engineering Co.*, 710 S.W.2d 690, 692 (Tex.App.—Corpus Christi 1986, no writ); *Baucum v. Statewide Hot Shot*, 550 S.W.2d 156, 159 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n.r.e.); Tex.R.Civ.P. 327.

Whether the alleged jury misconduct has occurred is a question of fact, and if there is conflicting evidence on the issue the finding by the trial court is binding on appellate review. *Strange v. Treasure City*, 608 S.W.2d 604, 606 (Tex.1980); *McAllen Coca Cola Bottling Co. v. Alvarez*, 581 S.W.2d 201, 204 (Tex.Civ.App.—Corpus Christi 1979, no writ).

Since there are no specific findings of fact as to whether the alleged misconduct occurred, it is implied that the trial court found that the misconduct did not occur, provided there is evidence to support such a finding. *Baucum*, 550 S.W.2d at 159–160; *Lanphier Construction Co. v. Fowco Construction Co.*, 523 S.W.2d 29, 36 (Tex. Civ.App.—Corpus Christi 1975, writ ref'd n.r.e.).

■ During voir dire, Ms. Williams answered questions which revealed that she was a legal assistant for Roger Thorpe and that one of Mr. Thorpe's clients was Mr. Ogletree. She said she had heard about Snyder Contracting Limited, but she didn't know that there was any connection between Mr. Snyder and Mr. Ogletree. Nor did she remember any conversations about Mr. Snyder. She said she knew Mr. Ogletree professionally, that she liked him, and that she thought he was an honest man but that she could consider contrary evidence and she would not lean one way or the other. She recalled that she had notarized some documents for Mrs. Ogletree. She said she knew a man named Mr. Welch professionally, and that she had never met Mr. Hubner but she knew him by name. Ms. Williams was not challenged for cause following voir dire.

At the new trial hearing the appellant presented two witnesses to prove that Ms. Williams intentionally withheld information that would have alerted appellant's attorney that she was prejudiced and should have been struck for cause. Mr. Hubner, an engineer who had worked for Mr. Ogletree, testified that it was apparent to him that Mr. Ogletree and Mr. Thorpe had a business relationship, that Mr. Ogletree used to make negative comments about Mr. Snyder and that Mr. Ogletree probably swayed Ms. Williams to have a negative view of Mr. Snyder. He testified that Ms. Williams' testimony that she had not met Mr. Hubner was false—that they had professional contact once when she notarized his signature and he had talked to her during two phone calls. He said they

would see each other in the office building occasionally and exchange greetings. The other witness, Mr. Thorpe, testified that he had an attorney/client and business relationship with Mr. Ogletree.

We have examined the evidence and find that the trial court did not abuse its discretion in finding that no misconduct occurred. Even if the trial court believed Mr. Hubner's testimony that Ms. Williams response that she had never met Mr. Hubner was false, there was no evidence that the failure to answer correctly was intentional or material. *See T.A.B. v. W.L.B.*, 598 S.W.2d 936, 941 (Tex.Civ.App.—El Paso 1980, writ ref'd n.r.e.) *cert. denied*, 454 U.S. 828, 102 S.Ct. 122, 70 L.Ed.2d 104 (1981); *cf. General Accident Fire and Life Assurance Corp. v. Coffman*, 326 S.W.2d 287, 291 (Tex.Civ.App.—Waco 1959, writ ref'd n.r.e.) (juror intentionally failed to disclose material information and juror admitted his bias at the motion for new trial hearing.)

Appellant complains that Ms. Williams failed to disclose that Mr. Thorpe and Mr. Ogletree had a business relationship. Ms. Williams was not asked such a question. "A juror cannot be held to have concealed that which she was never asked to disclose." *McCormick v. Texas Commerce Bank National Ass'n*, 751 S.W.2d 887, 892 (Tex.App.—Houston [14th Dist.] 1988, writ denied). Point of error number one is overruled.

■ By point of error two, Snyder contends the trial court gave an incorrect definition of process to the jury. The definition of process the judge gave the jury was as follows:

Process is traditionally defined as the writ, summons, mandate or other process which is used to inform the defendant of the beginning of judicial proceedings against him and to compel his appearance in court. In a narrow sense, process refers to individual writs issued by the court during or after judicial proceedings. Process has been broadly interpreted to include the entire range of procedures connected with judicial proceedings after the arrest warrant has issued.

The only objection to the court's charge by the plaintiff was the following statement: "On page four, last sentence, last line dealing with definitions for process, I'm going to object to the phrase "after the arrest warrant has been issued." The court inquired if there was anything else and the plaintiff's attorney responded, "I think that's it."

An objection to a jury charge needs to clearly designate the error and explain the grounds of complaint in order to afford the trial court an opportunity to correct errors. *Castleberry v. Branscum*, 721 S.W.2d 270, 276 (Tex.1986); Tex.R.Civ.P. 274. The failure of an objection to include an explanation of its complaint as required by Rule 274 waives error on appeal. *Castleberry*, 721 S.W.2d at 277; *Donnelley Marketing v. Lionel Sosa, Inc.*, 716 S.W.2d 598, 601 (Tex.App.—Corpus Christi 1986, no writ). Furthermore, the trial court has discretion in determining the sufficiency of instructions and definitions. *Lumbermens Mutual Casualty v. Garcia*, 758 S.W.2d 893, 894 (Tex.App.—Corpus Christi 1988, writ pending); *McCane Sondock Detective Agency v. Penland Distributors, Inc.*, 523 S.W.2d 62, 67 (Tex.Civ.App.—Houston [14th Dist.] 1975, no writ); Tex.R.Civ.P. 277. Since in a cause of action for abuse of process the misuse of process must be an improper use of the process after its issuance, and not merely the procurement of process, the trial court's instruction was not an abuse of discretion. *Martin*, 578 S.W.2d at 769; *Tandy Corp.*, 527 S.W.2d at 249.

By point of error three, appellant complains the trial court erred in not granting his requested instruction. The record fails to disclose either an objection in writing and the grounds therefore or an objection dictated to the court reporter as required by Tex.R.Civ.P. 272. Nevertheless, even considering appellant's complaint we find no error in the trial court's instructions. Appellant's points of error two and three are overruled.

Because our decision on these points controls the disposition of the case, it is unnecessary to rule on appellant's final point. Tex.R.App.P. 90(a).

The judgment of the trial court is AFFIRMED.