**Larry L. ROSE, Appellant,**

v.

**FIRST AMERICAN TITLE INSURANCE COMPANY OF TEXAS and Brian Scott Carr, Appellees.**

No. 13–94–140–CV.

Court of Appeals of Texas, Corpus Christi.

Aug. 24, 1995.

**640**

Richard D. Schell, R. Bruce Phillips, Fleuriet & Schell, Harlingen, for appellant.

William M. Mills, Stephen C. Haynes, Lisa D. Powell, Atlas & Hall, McAllen, for appellees.

Before DORSEY, YAÑEZ and RODRIGUEZ, JJ.

## OPINION

YAÑEZ, Justice.

Appellant, Larry Rose, appeals summary judgment entered in favor of appellees, First American Title Insurance Company of Texas ("First American") and Brian Scott Carr on his claims for libel, intentional infliction of emotional distress, and abuse of process. By seven points of error, appellant challenges the propriety of the summary judgment order. We affirm.

In the summer of 1989 appellant's sister-in-law sold her home. First American issued title policy insurance to the buyers in that transaction. After the sale, appellant's sister-in-law delivered $40,000.00 of the sales proceeds to appellant for him to invest. Appellant is a certified public accountant, but at no time did he perform any professional services for his sister-in-law.

It was later discovered that a Federal Tax Lien had been placed on the home for $35,713.78 in unpaid taxes. At the time of the home's sale, however, both parties claim that they did not know of the tax lien. First American paid the Internal Revenue Service the balance of the lien to remove the encumbrance for the buyer. First American then sued appellant and his sister-in-law for recovery of the lien amount paid to the I.R.S. First American named appellant in that suit because they believed that appellant's sister-in-law paid appellant the $40,000.00 in an effort to fraudulently defeat First American's and the I.R.S.'s rights to recover the unpaid taxes. In the course of that litigation, Brian Scott Carr, First American's attorney, sent a letter to appellant on October 12, 1990, seeking a settlement. In that letter, Carr outlined what he believed appellant could be held liable for, and he also indicated that he could report appellant to the Texas State

Board of Public Accountancy ("BPA"). Carr described that a grievance proceeding could be costly for appellant to defend and that appellant could be deprived of his "livelihood." Carr informed appellant that if he settled, First American would agree "not to pursue a Grievance Committee procedure."

Apparently, no settlement was reached; on November 11, 1991, Carr, on behalf of First American, sent a letter to the BPA. In the correspondence, Carr informed the board of appellant's alleged conduct. Carr stated that he believed appellant acted to defraud the I.R.S., acted to defraud First American, violated the organization's rules and practiced "chicanery." The BPA dismissed the claims against appellant. Appellant bases his claims of libel, intentional infliction of emotional distress and abuse of process on the November 11, 1991, letter to the BPA. Appellant contends that the letter and the initiation of the grievance process constitutes a libelous communication, intentional infliction of emotional distress, and abuse of process.

In order to sustain a summary judgment, we must determine that the pleadings and summary judgment evidence establish that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. *McFadden v. American United Life Ins. Co.,* 658 S.W.2d 147, 148 (Tex.1983). We accept all evidence favorable to the nonmovant as true and all reasonable inferences must be indulged in favor of the nonmovant and any doubts resolved in its favor. *Nixon v. Mr. Property Mgt. Co.,* 690 S.W.2d 546, 549 (Tex.1985). A defendant who moves for summary judgment has the burden of showing as a matter of law that no material issue of fact exists for the plaintiff's cause of action. *Arnold v. National County Mut. Fire Ins. Co.,* 725 S.W.2d 165, 166–67 (Tex.1987). This may be accomplished by defendant's summary judgment evidence showing that at least one element of plaintiff's cause of action has been conclusively established against the plaintiff. *Sakowitz, Inc. v. Steck,* 669 S.W.2d 105, 106–07 (Tex.1984); *Gibbs v. General Motors Corp.,* 450 S.W.2d 827, 828 (Tex.1970). Additionally, defendants are entitled to a summary judgment if they conclusively establish as a matter of law all elements of an affirmative defense. *Casso v. Brand,* 776 S.W.2d 551, 556 (Tex.1989); *Swilley v. Hughes,* 488 S.W.2d 64, 67 (Tex.1972).

When the trial court's order, as in this case, does not specify the ground or grounds relied on for the ruling, summary judgment will be affirmed if any of the theories advanced in the motion are meritorious. *Rogers v. Ricane Enters., Inc.,* 772 S.W.2d 76, 79 (Tex.1989). Here, First American moved for summary judgment on the libel and intentional infliction of emotional distress claims based upon the affirmative defenses of absolute privilege and limitations. On the claim of abuse of process, First American argues that it is entitled to summary judgment because it conclusively established at least one element against plaintiff's cause of action.

By point of error one, appellant argues that First American failed to conclusively establish the affirmative defense of absolute privilege which bars his claim of libel. Appellant bases his claim on the letter First American sent to the BPA.

Communications in the due course of a judicial proceeding will not serve as the basis of a civil action for libel or slander, regardless of the negligence or malice with which they are made. *James v. Brown,* 637 S.W.2d 914, 916 (Tex.1982); *Reagan v. Guardian Life Ins. Co.,* 140 Tex. 105, 166 S.W.2d 909 (1941). This privilege extends to any statement made by the judges, jurors, counsel, parties or witnesses, and attaches to all aspects of the proceedings, including statements made in open court, pre-trial hearings, depositions, affidavits and any of the pleadings or other papers in the case. *James,* 637 S.W.2d at 916–17. The rule that communications uttered or published in the course of a judicial proceeding are absolutely privileged, applies to proceedings before executive officers, and boards and commissions which exercise quasi-judicial powers. *Reagan,* 166 S.W.2d 909.

Appellant first argues that the filing of a complaint with the BPA does not amount to a quasi-judicial proceeding under the rule of privilege. Appellant does not disagree

that the BPA has quasi-judicial powers or that it is a quasi-judicial board. Appellant argues instead that only the Board may initiate a proceeding; the filing of a complaint does not automatically institute a proceeding. *See* Tex.Rev.Civ.Stat.Ann. art. 41a–1, § 22(a) & (b) (Vernon Supp.1995). Thus, a complaint filed with the BPA does not constitute a communication published during a proceeding of a quasi-judicial board. The quasi-judicial proceeding has not yet begun at the time the complaint is filed. We recognize, nonetheless, that the BPA may initiate a proceeding on the complaint of any person. Tex.Rev.Civ.Stat.Ann. art. 41a–1, § 22(b) (Vernon Supp.1995). Thus, a complaint may merely be the first step to a proceeding.

The question appellant raises has been addressed. In *Reagan,* the court held that complaints from the general public to licensing boards, as is the case here, fall under the protection of absolute privilege. *Reagan,* 166 S.W.2d at 913 (complaint to Insurance Board protected by privilege). Furthermore, *James* held that absolute privilege "attaches to all aspects of the proceedings, including . . . any of the pleadings or other papers in the case." *James,* 637 S.W.2d at 916. The letter First American sent to the BPA falls within other papers filed with a board of quasi-judicial power. The letter also falls within those communications contemplated by the doctrine of absolute privilege.

Appellant next argues that while privilege may generally apply, First American stepped out from under its protection. Appellant contends that by reading the October 12, 1990, letter seeking a settlement and the letter to the BPA together, it is evident that First American sought to abuse its absolute privilege. Appellant contends that First American sought to coerce and extort a settlement with the threat of filing a complaint with the BPA. Appellant asserts that when a party abuses its privilege, the court should not continue to shield that party from liability. Appellant, therefore, claims that several fact issues exist as to First American's motivation and interest in sending the complaint letter to the BPA. Appellant cites *Livingston Shipbuilding Co. v. Inland West Corp.* as supporting this position. *Levingston*

*Shipbuilding Co. v. Inland West Corp.,* 688 S.W.2d 192, 196 (Tex.App.—Beaumont 1985, writ ref'd n.r.e.) (citing *De Mankowski v. Ship Channel Dev. Co.,* 300 S.W. 118 (Tex. Civ.App.—Galveston 1927, no writ)).

In *Levingston* the court found that when Levingston filed its lawsuit, its petition was privileged. Levingston, however, trampled beyond the privilege's protection. *Id.* Immediately after filing, a Levingston employee gave the petition to the news media which resulted in extensive publication and harm to the other party's reputation for confidentiality. *Id.* The *Levingston* court found that although the initial pleading was privileged, the subsequent acts and re-publication of the pleading were not. The Levingston employee acted outside what the privilege was intended to protect. In *De Mankowski,* the court likewise held that a petition filed with the court was privileged. Yet, when that party re-expressed the accusations made in the petition outside the judicial proceeding, the party was no longer protected by judicial privilege. *De Mankowski,* 300 S.W. at 122. The *De Mankowski* court held that

> [t]he privilege accorded a litigant which exempts him from liability for damages caused by false charges made in his pleadings, or in the court in the course of a judicial proceeding, cannot be enlarged into a license *to go out in the community* and make false and slanderous charges against his court adversary and escape liability for damages caused by such charges on the ground that he had made similar charges in his court pleadings.

*Id.* (emphasis added).

We find the *Levingston* and *De Mankowski* holdings distinguishable from the facts of this case. Appellant does not allege that First American made any publication of the grievance letter other than to the BPA. Appellant simply argues that when First American sent its letter, it intended to abuse judicial privilege and was singularly motivated by retribution and extortion. Yet, under the rule of judicial privilege, the letter was protected when filed. No other action by First American or Carr is alleged to have created a circumstance where First American exceeded the privilege. First American used a

lawful method to communicate its grievance. Appellant does not claim that First American or Carr acted outside official judicial proceedings to defame him. Appellant does not argue, as in the *Levingston* and *De Mankowski* cases, that First American re-published the alleged defamatory accusations to any person or entity outside the judicial proceeding. Furthermore, the letter, as a petition to the BPA, was protected regardless of the negligence or malice with which it was made. *James*, 637 S.W.2d at 916; *Reagan*, 166 S.W.2d at 913 (when defendant filed his letter with quasi-judicial board, "he committed an act for which the law provides no redress in damages" even if the letter is false or forged).

First American, through Carr's letter, utilized a proper and legal method for dealing with its grievance. We find that the grievance letter was subject to the doctrine of absolute privilege. To hold that a properly directed grievance is not shielded by absolute privilege would be to nullify the principle of judicial privilege and its powerful practical underpinnings. If appellant believes that First American filed the letter simply to coerce and intimidate him, he may have recourse under a theory of malicious prosecution. *See James*, 637 S.W.2d at 918. There being no genuine issues of fact, summary judgment was proper on the affirmative defense of absolute privilege. Point of error one is overruled.

■ By his fourth and fifth points of error, appellant argues that summary judgment was improper for his claim of intentional infliction of emotional distress. We have already determined that the rule of absolute privilege applies to the letter Carr sent on behalf of First American to the BPA. Appellant argues, nonetheless, that the doctrine of privilege applies only to causes of action for defamation and not to intentional infliction of emotional distress claims. We disagree.

Absolute privilege also applies when the theory of recovery is intentional infliction of emotional distress. *K.B. v. N.B.*, 811 S.W.2d 634, 640 (Tex.App.—San Antonio 1991, writ denied); *see also Motsenbocker v. Potts*, 863 S.W.2d 126, 132 (Tex.App.—Dallas 1993, no writ) (citing RESTATEMENT (SECOND) OF TORTS

§ 46 cmt. g) (outrageous conduct is privileged where actor "has done nothing more than to insist upon his legal rights in a permissible way"). If that were not the law, "a litigate could plead around the defamation privilege of *James v. Brown* by labeling his defamation case as one for intentional infliction of emotional distress." *Id.* "A different set of rules governs suits alleging malicious *institution* of civil proceedings." *Id.* (emphasis in original) (citing *James*, 637 S.W.2d at 918–19). Privilege also applies to appellant's claim for intentional infliction of emotional distress. Summary judgment was properly granted on this claim. Points four and five are overruled.

■ By point of error seven, appellant contends that First American failed to conclusively establish at least one element against him in his abuse of process claim. Appellant argues that First American abused the process when it filed the complaint letter with the BPA. Appellant argues that First American sent the letter merely to satiate its ulterior motives of coercion, extortion and intimidation.

■ The elements of an action for abuse of process are (1) that the defendant made an illegal or improper use of the process, (2) that the defendant had an ulterior motive or purpose in exercising such illegal or improper use of process, and (3) that damage resulted to the plaintiff from the irregularity. *Snyder v. Byrne*, 770 S.W.2d 65, 67 (Tex. App.—Corpus Christi 1989, no writ); *Martin v. Treviño*, 578 S.W.2d 763, 769 (Tex.Civ. App.—Corpus Christi 1978, writ ref'd n.r.e.). "The mere procurement or issuance with a malicious intent or without probable cause is not actionable. This is so because there must be an improper use of process after its issuance." *Snyder*, 770 S.W.2d at 67 (quoting *Martin*, 578 S.W.2d at 769 (institution or filing of civil action is not abuse of process)); *see Tandy Corp. v. McGregor*, 527 S.W.2d 246, 249 (Tex.Civ.App.—Texarkana 1975, writ ref'd n.r.e) (mere issuance of process is not actionable as an abuse of process). In this case, appellant claims that the grievance letter sent to the BPA was an abuse of process because First American filed it with

malice and in an attempt to coerce a settlement.

First American argues that it did not make an illegal or improper use of the process simply by filing a complaint. We agree. First American merely filed an original complaint with the BPA which sought procurement and issuance for a grievance proceeding. Appellant points to no other circumstance beyond the filing of the letter where First American abused process. Summary judgment was proper on the abuse of process claim. Point seven is overruled.

Having reached a determination fully disposing of the case, we need not address appellant's remaining points of error. TEX. R.APP.P. 90(a). The trial court judgment is AFFIRMED.