COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-03-205-CV
 
 
5-STATE 
HELICOPTERS, INC. AND                                 APPELLANTS 
AND
BRADFORD 
SCOTT LADUE                                                      APPELLEES
 
V.
 
JOHN 
E. COX AND BRIAN NOVICKIS                                APPELLEES 
AND
                                                                                       
APPELLANTS
 
------------
 
FROM 
THE 236TH DISTRICT COURT OF TARRANT COUNTY
 
------------
 
OPINION
 
------------
 
        In 
this libel and tortious interference case, 5-State Helicopters, Inc. and 
Bradford Scott Ladue (appellants) appeal from a judgment for John E. Cox and 
Brian Novickis (appellees). In three issues, appellants contend that the 
judgment should be reversed because appellees’ claims are barred by the 
doctrines of limitations and absolutely privileged communications[1] and the evidence is legally and factually insufficient to 
support the jury’s findings on liability and damages.  Appellees bring a 
conditional cross-appeal, in which they challenge the jury instruction on malice 
pertinent to their libel claim. Because we conclude that the absolute privilege 
doctrine bars both of appellees’ claims, we will reverse and render.
        Appellants 
are in the business of helicopter heavy lift operations.  At the time the 
events pertinent to this case occurred, appellees were Federal Aviation 
Administration (FAA) safety inspectors assigned to the Fort Worth Flight 
Standards District Office (FSDO).  In November 1998, appellees were in Waco 
for another business purpose when they noticed appellants conducting a heavy 
lift operation and decided to perform an inspection of appellants’ 
helicopters.  As a result of the inspection, appellees and other FAA 
officials conducted an investigation into whether appellants were in violation 
of federal air safety laws. While the FAA investigation was pending, appellants 
wrote two letters of complaint to the FAA, requesting an internal investigation 
into appellees’ actions and calling for their resignations. The FAA conducted 
the requested internal investigation and informed appellees that they had done 
nothing wrong. Appellees were, however, dissatisfied with the outcome of the 
internal investigation because they believed it did not completely exonerate 
them.
        Consequently, 
appellees sued appellants for libel and tortious interference with contract. 
Appellees alleged that appellants’ libelous statements resulted in appellees 
being investigated, caused them shame, humiliation, and mental anguish, and 
greatly damaged their reputations professionally and in the community. Appellees 
further alleged that appellants’ conduct unlawfully interfered with and 
adversely affected appellees’ contractual relations with their employer, the 
FAA. The case was tried to a jury, which returned a verdict favorable to 
appellees on both theories.
        Appellants 
moved for judgment notwithstanding the verdict, asserting, among other things, 
that their statements were absolutely privileged and therefore not subject to a 
claim for civil liability.[2]  At appellees’ 
request, however, the trial court rendered judgment for them on their tortious 
interference with contract claim. This appeal followed.
        In 
their second issue, appellants contend that their statements regarding appellees 
in their letters to the FAA were absolutely privileged communications because 
they were made during the course of a quasi-judicial proceeding. Appellants 
assert that they are therefore immune from civil liability based on the 
statements. Appellees contend that the statements were not made during the 
course of a quasi-judicial proceeding because they were not made during an 
administrative hearing or an appeal from an administrative hearing.
        An 
absolutely privileged communication is one for which, due to the occasion upon 
which it was made, no civil remedy exists, even though the communication is 
false and was made or published with express malice. See Bird v. W.C.W., 
868 S.W.2d 767, 771-72 (Tex. 1994); James v. Brown, 637 S.W.2d 914, 916 
(Tex. 1982); Reagan v. Guardian Life Ins. Co., 140 Tex. 105, 166 
S.W.2d 909, 912 (1942). This doctrine has been firmly established in Texas for 
well over one hundred years. See Runge v. Franklin, 72 Tex. 585, 10 S.W. 
721, 723 (1889). The absolute privilege applies to communications related to 
both proposed and existing judicial and quasi-judicial proceedings. James, 
637 S.W.2d at 916-17; Reagan, 166 S.W.2d at 912-13; Randolph v. 
Jackson Walker L.L.P., 29 S.W.3d 271, 278 (Tex. App.—Houston [14th Dist.] 
2000, pet. denied); Attaya, 962 S.W.2d at 239.
        A 
proceeding is quasi-judicial in nature if it is conducted by a governmental 
executive officer, board, or commission that has the authority to hear and 
decide the matters coming before it or to redress the grievances of which it 
takes cognizance. Attaya, 962 S.W.2d at 239; Hernandez v. Hayes, 
931 S.W.2d 648, 651 (Tex. App.—San Antonio 1996, writ denied); McAfee v. 
Keller, 452 S.W.2d 56, 57-58 (Tex. Civ. App.—Houston [14th Dist.] 1970, no 
writ). Even communications made in contemplation of or preliminary to a 
quasi-judicial proceeding are privileged if they concern a matter that the 
quasi-judicial body is authorized to investigate and decide. Reagan, 166 
S.W.2d at 913; see also Attaya, 962 S.W.2d at 238-39; Rose v. First 
Am. Title Ins. Co., 907 S.W.2d 639, 641-42 (Tex. App.—Corpus Christi 1995, 
no writ); Putter v. Anderson, 601 S.W.2d 73, 75, 77 (Tex. Civ. 
App.—Dallas 1980, writ ref’d n.r.e.) (all holding that private citizen’s 
complaint may be first step in quasi-judicial proceeding if governmental entity 
has duty or authority to investigate and resolve same). Such communications 
stand “on the same footing [regarding] libel as do communications made in a 
court of justice.” Reagan, 166 S.W.2d at 913.
        The 
public policy behind the application of the absolute privilege to judicial 
proceedings is that the administration of justice requires full disclosure from 
witnesses, unhampered by fear of retaliatory suits for defamation. James, 
637 S.W.2d at 917. Similarly, the rationale for extending the absolute privilege 
to statements made during quasi-judicial proceedings rests in the public policy 
that every citizen should have the unqualified right to appeal to governmental 
agencies for redress “without the fear of being called to answer in damages” 
and that the administration of justice will be better served if witnesses are 
not deterred by the threat of lawsuits. Attaya, 962 S.W.2d at 239 
(quoting Parker v. Holbrook, 647 S.W.2d 692, 695 (Tex. App.—Houston 
[1st Dist.] 1982, writ ref’d n.r.e.)). The absolute privilege is intended to 
protect the integrity of the process and ensure that the quasi-judicial 
decision-making body gets the information it needs. Id.
        Whether 
an alleged defamatory statement is related to a proposed or existing judicial or 
quasi-judicial proceeding, and is therefore absolutely privileged, is a question 
of law. Reagan, 166 S.W.2d at 912; Randolph, 29 S.W.3d at 278; Thomas 
v. Bracey, 940 S.W.2d 340, 343 (Tex. App.—San Antonio 1997, no pet.). All 
doubts should be resolved in favor of the communication’s relation to the 
proceeding. Randolph, 29 S.W.3d at 278; Thomas, 940 S.W.2d at 343.
        In 
this case, FAA’s quasi-judicial status is not in dispute. The FAA 
Administrator may reinspect and reexamine any civil aircraft at any time to 
ensure that the aircraft is in compliance with federal air safety laws. 49 
U.S.C.A. § 44709(a) (West Supp. 2004). If it appears that a person may be in 
violation of federal aviation statutes or regulations, the FAA is authorized to 
initiate an investigation and decide whether any violations have occurred. Id. 
§ 46101(a)(2), (4). The FAA may, among other things, hold administrative 
hearings, issue orders of compliance, assess civil penalties, seize noncompliant 
aircraft, or bring a civil enforcement action in federal district court. Id. 
§ 46106; FAA, DOT Investigative and Enforcement Procedures, 14 C.F.R. §§ 
13.16-.17, 13.19-.20, 13.75, 13.81 (2004). If, however, as a result of the 
investigation, the FAA determines that a violation has occurred that does not 
require legal enforcement action, an appropriate official in the FAA field 
office responsible for processing the enforcement case “may take 
administrative action in disposition of the case.” 14 C.F.R. § 13.11(a). Such 
administrative actions include issuing a warning notice to the alleged violator. 
Id. § 13.11(b)(1).
        Here, 
appellees inspected appellants’ aircraft on November 20, 1998 to ensure that 
the aircraft were in compliance with federal air safety laws. Before the 
inspection, Novickis informed Ladue that he (Novickis) was “acting as the 
[FAA] Administrator” and had the authority under federal regulations to 
conduct the inspection. During the inspection, appellees noticed a battery 
installation in one helicopter that did not appear to meet federal airworthiness 
standards and fuel storage drums that appeared to contain hazardous materials. 
Appellees also questioned whether the flooring in one of the helicopters 
complied with federal regulations. Further, contrary to federal regulations, the 
flight manual was missing from one helicopter.
        As 
a result of the November 1998 inspection, Novickis filed an enforcement 
investigative report, listing the federal regulation that he believed appellants 
had violated. In addition, at the Fort Worth FSDO’s request, FAA investigators 
interviewed appellees, conducted a second inspection of appellants’ aircraft, 
and proceeded with an investigation to determine whether appellants had violated 
federal regulations. Meanwhile, on November 23 and December 8, 1998, appellants 
wrote their letters to the FAA complaining of the November 1998 inspection.
        After 
the investigation concerning appellants’ aircraft was complete, the FAA 
concluded that most of the matters raised by the November 1998 inspection should 
be closed with no further action. The FAA informed appellants of this conclusion 
by letter on March 25, 1999. The FAA did conclude that appellants had violated 
federal regulations by not having a flight manual on one of their aircraft, but 
also concluded that the violation did not require legal enforcement action. 
Accordingly, as authorized by the federal regulations, the Fort Worth FDSO took 
administrative action disposing of the case. See 14 C.F.R. § 13.11(a). 
On March 30, 1999, Novickis, with his supervisor’s authorization, issued a 
warning letter informing appellants of the violation and of the FAA’s 
conclusion that it would not pursue legal enforcement action, but would make the 
warning letter a matter of record. See id. § 13.11(b)(1).
        Because 
the FAA had the authority to both initiate the investigation into whether 
appellants were in compliance with federal air safety laws and dispose of 
appellants’ violation administratively without legal enforcement action, the 
FAA’s actions stemming from the November 1998 inspection constituted a 
quasi-judicial proceeding. See Reagan, 166 S.W.2d at 913; Attaya, 
962 S.W.2d at 239. Further, although appellants, in their two letters to the 
FAA, requested a separate investigation into appellees’ conduct during the 
November 1998 inspection, their statements were also related to the FAA’s 
investigation regarding their aircraft because they complained of the very 
inspection that resulted in that proceeding. See Thomas, 940 S.W.2d at 
343; Bennett v. Computer Assocs. Int’l, Inc., 932 S.W.2d 197, 201 (Tex. 
App.—Amarillo 1996, writ denied) (both holding that communication must bear 
some relationship to pending or proposed judicial proceeding in order for 
absolute privilege to apply). In addition, even if there were a doubt as to the 
communications’ relevance to the FAA’s quasi-judicial proceeding, we would 
be required to resolve it in favor of—not against—a relation to the 
proceeding. Randolph, 29 S.W.3d at 278; Thomas, 940 S.W.2d at 343.
        The 
mere fact that the FAA’s investigation did not culminate in a full-blown 
administrative hearing or a “formal adjudication”[3] 
did not alter its quasi-judicial nature. It is undisputed that the FAA had the 
authority to conduct such a hearing and adjudication if it had determined that 
such measures were necessary. A proceeding’s quasi-judicial status depends on 
whether the governmental entity has the authority to investigate and 
decide the matters at issue, not on the length, complexity, or outcome of the 
proceeding. See Reagan, 166 S.W.2d at 913; Attaya, 962 S.W.2d at 
238-39; Rose, 907 S.W.2d at 641-42; Putter, 601 S.W.2d at 75, 77 
(all holding that respective proceedings were quasi-judicial because 
governmental entities had authority to investigate and resolve private 
citizens’ complaints).
        Moreover, 
to adopt the narrow view of quasi-judicial proceedings that appellees urge would 
result in a rule that private citizens’ communications to a quasi-judicial 
body about a matter that the entity was authorized to investigate and resolve 
would not be privileged unless and until the proceeding reached the 
administrative hearing stage. Such a rule would have a chilling effect on the 
free flow of information and deter rather than aid the decision-making body’s 
efforts to obtain necessary information. See James, 637 S.W.2d at 917; Attaya, 
962 S.W.2d at 239. In addition, the policy furthering the general public’s 
right to appeal freely to governmental entities for redress without the fear of 
lawsuits is of such importance that it is entitled to protection even at the 
expense of damage to a particular individual. See Bird, 868 S.W.2d at 
771; Reagan, 166 S.W.2d at 913; Attaya, 962 S.W.2d at 239.
        In 
summary, we hold that, because appellants’ two letters were related to a 
matter that the FAA was authorized to investigate and determine—whether 
appellants’ aircraft were in compliance with federal aviation 
laws—appellants’ statements in their letters were related to a 
quasi-judicial proceeding and were absolutely privileged, regardless of the 
truth, falsity, or malicious nature of the statements. Moreover, both appellees’ 
claim for libel and their claim for tortious interference with contract are for 
defamation-type damages based on the allegedly libelous communications;[4] therefore, the absolute privilege doctrine bars both 
claims. See Bird, 868 S.W.2d at 771-72 (extending absolute privilege 
beyond defamation cases to bar suits in which damages sought are basically 
“defamation damages,” in order to avoid the “circumvention [of the policy 
behind the privilege] by affording an almost equally unrestricted action under a 
different label”); In re Hinterlong, 109 S.W.3d 611, 636 (Tex. 
App.—Fort Worth 2003, orig. proceeding) (op. on reh’g); Ledbetter v. 
Ramsey, No. 02-02-00248-CV, 2003 WL 360635, at *2 (Tex. App.—Fort Worth 
Feb. 20, 2003, pet. denied) (mem. op.) (Gardner, J., concurring) (both noting 
extension). Accordingly, we sustain appellants’ second issue. We reverse the 
trial court’s judgment and render judgment that appellees take nothing.[5]
  
  
                                                                  JOHN 
CAYCE
                                                                  CHIEF 
JUSTICE
  
  
PANEL 
A:   CAYCE, C.J.; GARDNER and MCCOY, JJ.
 
DELIVERED: 
July 29, 2004

 
NOTES
1.  
Appellants also refer to this doctrine as quasi-judicial immunity. See 
Hurlbut v. Gulf Atl. Life Ins. Co., 749 S.W.2d 762, 768 (Tex. 1987) (stating 
that absolute privilege is more properly thought of as an immunity because it is 
based on the personal position or status of the actor); Attaya v. Shoukfeh, 
962 S.W.2d 237, 238 (Tex. App.—Amarillo 1998, pet. denied) (referring to 
absolute privilege as an immunity).
2.  
Appellants also raised absolute privilege in a pretrial motion for summary 
judgment, which the trial court denied.
3.  
See 14 C.F.R. § 13.11(b)(2) (stating that issuance of a warning letter 
“does not constitute a formal adjudication of the matter”).
4.  
The trial court’s jury instruction on damages instructed the jury to consider 
the following elements of damages:

A. 
General damages. “General 
damages” are those that naturally, proximately, and necessarily result from 
defamation, such as injuries to character or reputation, injuries to feelings, 
mental anguish, and other like wrongs and injuries incapable of money valuation. 
In calculating general damages you may include lost earning capacity, if any. 
General damages may be presumed by you if the publication is libel per se, that 
is, if the libel injures John Cox[/Bryan Novickis] in his office, business, 
profession, or occupation.
5.  
In light of our holding with regard to appellants’ second issue, we need not 
address the parties’ remaining issues. See Tex. R. App. P. 47.1.