

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-21-00031-CV

---

**SCOUT ENERGY MANAGEMENT, LLC; SCOUT ENERGY GROUP II; SCOUT ENERGY PARTNERS III-A, LP; SCOUT ENERGY PARTNERS IV, LP; AND SCOUT ENERGY PARTNERS IV-A, LP, APPELLANTS**

V.

**INDIAN SPRINGS CATTLE COMPANY, LLC, APPELLEE**

On Appeal from the 251st District Court
Potter County, Texas
Trial Court No. 110,102-C-CV, Honorable Ana Estevez, Presiding

November 5, 2021

## MEMORANDUM OPINION

Before QUINN, C.J., and PARKER and DOSS, JJ.

Scout Energy Management, LLC; Scout Energy Group II; Scout Energy Partners III-A, LP; Scout Energy Partners IV, LP; and Scout Energy Partners IV-A, LP (collectively referred to as Scout) appeal the trial court's judgment dismissing their counterclaim under the Texas Citizens Participation Act, TEX. CIV. PRAC. & REM. CODE ANN. § 27.001 *et seq.* (TCPA) and awarding attorney's fees to Indian Springs Cattle Company. We affirm.

*Background*

This appeal arises from a less than amicable relationship between a surface owner of ranchland and the underlying mineral owner. Indian Springs was the former and Scout, the latter. This particular case involved the use of what we will call the CIG Road. It once was a public road in Moore County used by Scout to develop the oil and gas field underlying Indian Springs' surface estate. Yet, Indian Springs and others applied to the Moore County Commissioners Court to close it. The commissioners court acceded to the request and conveyed its interest in the CIG Road to the landowners abutting it. They happened to be Indian Springs. The decision then was memorialized in the minutes of the meeting and in an "Order Closing, Abandoning, and Vacating a Portion of CIG Road" (CIG Road Order). According to Scout, Indian Springs not only obtained the road's closure through artifice but also used it as a means of restricting Scout's use of the road.

The eventual lawsuit began with Indian Springs initiating a declaratory action to adjudicate rights between the parties regarding the land. Scout filed a counterclaim seeking declaratory relief and damages for abuse of process. Concerning the latter, it averred in its original counterclaim:

> [A]n abuse of process claim against Indian Springs relating to its procurement and use of the CIG Road Order to extort Scout's compliance with requests to maintain the road despite Indian Springs' obligation to do so and to use as a pretext for revoking "permission" for Scout to use CIG Road for the exploration, development, production, and marketing of the oil and gas underlying the Property.

Invoking the TCPA, Indian Springs moved to dismiss the cause of action for abused process. Thereafter, Scout amended its counterclaim and altered, to some extent, its allegation concerning the cause of action. No longer did the complaint refer to the "procurement" of the CIG Road Order but merely its "use" to "extort Scout's compliance

2

with requests to maintain the road . . . and as a pretext for revoking 'permission'" to use the road.  Scout also responded to the TCPA motion.  Ultimately, the trial court granted the motion, dismissed the claim of abused process, and assessed attorney's fees against Scout.

Scout raises three general issues on appeal.  First, it contends that the trial court erred by granting the motion because the TCPA did not apply.  Second, even if the TCPA applied, it established a prima facie case for each element of its claim.  Finally, even if the trial court did not err in dismissing the claim, it did so when by awarding attorney's fees to Indian Springs after deeming the cause of action frivolous.

*TCPA General Principles*

Under the TCPA, a party may move to dismiss a "legal action" that is "based on or . . . in response to a party's exercise of the right of free speech . . . [or the] right to petition." TEX. CIV. PRAC. & REM. CODE ANN. § 27.003(a); *Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC*, 591 S.W.3d 127, 131 (Tex. 2019).  The scope of a "legal action" includes counterclaims.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(6).

Furthermore, the standard we apply and analytical journey in which we engage was discussed in *Mesquite Servs., LLC v. Std. E&S, LLC*, 610 S.W.3d 548, 555 (Tex. App.—Amarillo 2020, pet. denied), and *Casey v. Stevens*, 601 S.W.3d 919, 922–23 (Tex. App.—Amarillo 2020, no pet.). Their reiteration is unnecessary here.

*Which Allegations Are Before Us?*

As previously mentioned, we deal with one cause of action averred in Scout's counterclaim, that is, abuse of process.  As originally pled, it encompassed two distinct time frames.  One concerned the procurement of the CIG Road Order, while the other

3

pertained to the use of that order once obtained.  We preliminarily determine the impact of Scout effectively nonsuiting the former aspect.

A motion to dismiss filed under the TCPA survives a decision to nonsuit claims. *See Abercrombie v. Angela Hightower Enters.*, No. 07-20-00139-CV, 2021 Tex. App. LEXIS 2920, at *2 (Tex. App.—Amarillo Apr. 19, 2021, no pet.) (mem. op.) (citing TEX. R. CIV. P. 162; *Nobles v. United States Precious Metals, LLC*, No. 09-19-00335-CV, 2020 Tex. App. LEXIS 2553, at *6 (Tex. App.—Beaumont Mar. 26, 2020, pet. denied) (mem. op.); and *Barker v. Hurst*, No. 01-17-00838-CV, 2018 Tex. App. LEXIS 4555, at *12–13 (Tex. App.—Houston [1st Dist.] June 21, 2018, no pet.) (mem. op.)).  The same also is true if nonsuit occurs by amending a pleading.  *See Clayton Mountain, LLC v. Ruff,* No. 11-20-00034-CV, 2021 Tex. App. LEXIS 6315, at *18 (Tex. App.—Eastland Aug. 5, 2021, no pet.) (mem. op.); *Gaskamp v. WSP USA, Inc.,* 596 S.W.3d 457, 468–69 (Tex. App.— Houston [1st Dist.] 2020, pet. dism'd) (en banc) (op. on reh'g).  Thus, Scout's amendment dropping that aspect of the complaint about procuring the order does not insulate the allegation from TCPA analysis.  That, in turn, means we consider both the procurement and use of the decision to close the road.

*Steps*

To reiterate, a party may file a motion to dismiss a "legal action" that is "based on" or "in response to" a party's exercise of various statutorily enumerated rights.  TEX. CIV. PRAC. & REM. CODE ANN. § 27.003(a).  The two enumerated rights implicated here are those of free speech and freedom to petition.  *Id.*  According to statute, the "exercise of the right to petition" encompasses a communication in connection with an issue under consideration or review by a legislative, executive, judicial, or other governmental body

4

or in another governmental or official proceeding. *Id.* § 27.001(4)(B). Furthermore, the relationship or nexus between the legal action or claim and the exercise of the right to petition need not be strong to trigger application of the TCPA. *See W. Mktg. v. AEG Petro., LLC*, 616 S.W.3d 903, 913 (Tex. App.—Amarillo 2021, pet. filed). It can be remote. *Id.* Indeed, the parameters of the nexus are very broad. *See Baylor Scott & White v. Project Rose MSO, LLC*, No. 12-20-00246-CV, 2021 Tex. App. LEXIS 7234, at *9–10 (Tex. App.—Tyler Aug. 30, 2021, no pet. h.). They "'include[] no qualifications as to . . . limits.'" *Id.* at *9 (quoting *ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 901 (Tex. 2017) (per curiam)). And, it is enough if the claim is merely "predicated" on conduct or communications encompassed by one of the protected rights. *Id.*; *Dyer v. Medoc Health Servs., LLC,* 573 S.W.3d 418, 428–29 (Tex. App.—Dallas 2019, pet. denied). So too is it enough if the claim is a reaction to or asserted after (i.e., spawned by) the communication or conduct. *See Baylor Scott & White,* 2021 Tex. App. LEXIS 7234, at *9–10; *W. Mktg.*, 616 S.W.3d at 913. That said, we also recall the words of our Supreme Court in *Hersh v. Tatum*, 526 S.W.3d 462 (Tex. 2017). The complainant's pleading is the best and all-sufficient evidence of the nature of the action. *Id.* at 467. So, the allegations within Scout's counterclaims are our starting point.

They describe a complaint emanating from Indian Springs' effort to seek and obtain an order in 2017 from the Moore County Commissioners Court to privatize CIG Road. Indian Springs alleged abuse of process began when it supposedly uttered false representations to the commissioners to induce a favorable outcome. It succeeded, according to Scout's averments. Through the CIG Road Order, the commissioners not only closed the once public road but also vested title to it in Indian Springs. The entity

5

then used ownership of the road to demand and "extort" benefits from Scout. Thus, Scout's abuse-of-process cause of action is factually predicated on and was spawned from (1) communications uttered by Indian Springs (2) to a governmental entity (3) for purposes of securing a benefit from that entity (4) which was then improperly used to "extort" benefits. Thus, we conclude that a reasonable interpretation of its counterclaim establishes that the claim at issue was based on or in response to Indian Springs' right to petition. Simply put, the cause of action, as alleged by Scout, falls within the prongs of the TCPA.

Having so concluded, our next step is to determine whether Scout established by clear and specific evidence a prima facie case for each essential element of its claim. TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c); *see Mesquite Servs.*, LLC, 610 S.W.3d at 555. We begin with considering that aspect of the claim involving Indian Springs' procurement of the CIG Road Order.

The elements of a claim for abuse of process are (1) an illegal, improper, or "perverted" use of the process, neither warranted nor authorized by the process, (2) an ulterior motive or purpose in exercising such use, and (3) damages caused by the illegal act. *Martinez v. English*, 267 S.W.3d 521, 528 (Tex. App.—Austin 2008, pet. denied); *Preston Gate, LP v. Bukaty*, 248 S.W.3d 892, 897 (Tex. App.—Dallas 2008, no pet.). Importantly, the claim presupposes an originally valid and regular "process" that was duly and properly issued. *Warner Bros. Entm't, Inc. v. Jones*, 538 S.W.3d 781, 817 (Tex. App.—Austin 2017), *aff'd*, 611 S.W.3d 1 (Tex. 2020). Consequently, focus lies on the use of that process once properly obtained as opposed to the motive for obtaining it. *Davis v. West*, 433 S.W.3d 101, 110–11 (Tex. App.—Houston [1st Dist.] 2014, pet.

6

denied); *accord Spencer v. Overpeck*, No. 04-16-00565-CV, 2017 Tex. App. LEXIS 2223, at *15–16 (Tex. App.—San Antonio Mar. 15, 2017, pet. denied) (mem. op.) (stating that "abuse of process refers to the improper use of the process after it has been issued"); *Snyder v. Byrne*, 770 S.W.2d 65, 67 (Tex. App.—Corpus Christi 1989, no pet.) (quoting *Martin v. Trevino,* 578 S.W.2d 763 (Tex. Civ. App.—Corpus Christi 1978, writ ref'd n.r.e.), for proposition that the gravamen of an action for abuse of process is the misuse of process, whether properly or improperly obtained, for any purpose other than that which it was designed to accomplish and the mere procurement or issuance with a malicious intent or without probable cause is not actionable). And, that is where Scout's procurement claim goes awry. Its focus lay not on the use of the commissioners court order of closure but rather the motive of Indian Springs in obtaining it. So, assuming *arguendo* that the document issued by the commissioners court manifesting its decision to close the road is a "process," that aspect of the claim exceeds the borders of an abused process claim.

That leaves us with the averment about Indian Springs' "use of the CIG Road Order to extort Scout's compliance" and such. And we return to address what we earlier assumed *arguendo*: whether the CIG Road Order is a "process." If it is not, then there can be no abuse of it for purposes of the claim.

The traditional notion of "process" encompasses a writ, summons, mandate, or like directive issued by a court "incident to litigation," either criminal or civil. *See Snyder*, 770 S.W.2d at 69; *Martin*, 578 S.W.2d at 769; *see also Wilson v. Arbors of Cent. Park ICG, LLC (In re Wilson)*, 610 B.R. 255, 273–74 (Bankr. N.D. Tex. 2019) (describing "process" as "the writ, summons, mandate, or other process which is used to inform the defendant

of the beginning of judicial proceedings against him and to compel his appearance in court" and "[i]n a narrow sense . . . refers to individual writs issued by the court during or after judicial proceedings"); *Kjellvander v. Citicorp*, 156 F.R.D. 138, 142 (S.D. Tex. 1994) (defining process as (1) "the writ, summons, mandate, or other process which is used to inform the defendant of the beginning of judicial proceedings against him and to compel his appearance in court"; (2) "individual writs issued by the court during or after judicial proceedings"; and (3) "[i]n a criminal proceeding, . . . the entire range of procedures connected with judicial proceedings after the arrest warrant has issued"); *accord Landry's, Inc. & Houston Aquarium, Inc. v. Animal Legal Def. Fund*, 566 S.W.3d 41, 63–64 (Tex. App.—Houston [14th Dist.] 2018), *rev'd in part on other grounds*, 2021 Tex. LEXIS 414 (Tex. May 21, 2021) (holding that a "Notice Letter" was not process because a court issues process, not a litigant). Common threads run through the examples of "process" mentioned in *Snyder*, *Martin*, *Wilson*, *Kjellvander*, and *Landry's.* One is compulsion coming from some judicial authority requiring action or inaction. Another is the presence of litigation. Neither thread appears in the CIG Road Order of the Moore County Commissioners Court.

As explained in the document, the commissioners gathered to address whether to abandon and close a public road. Apparently eight members of the precinct in which the road was located applied for closure. That resulted in public notification of the proposal and a hearing being convened on same. In ultimately voting to close the road, the commissioners court did not order anyone, much less Scout, to act or refrain from acting in some manner. It simply declared the road closed and conveyed title to the property upon which it lay to abutting landowners, i.e., Indian Springs.

8

While a county commissioners court may be said to perform some measure of judicial duty, it wears many hats. They include those of an executive, administrative, and legislative body. *See Henry v. Cox*, 520 S.W.3d 28, 36 (Tex. 2017). How the CIG Road Order emanated from the commissioners court performing a judicial function, as opposed to a legislative, administrative, or executive one, is beyond reasonably articulable description. As said in *Tex. State Bd. of Dental Examiners v. Fieldsmith*, 242 S.W.2d 213, 215 (Tex. Civ. App.—Dallas 1951, writ ref'd n.r.e.), the "judicial function consists of (a) ascertainment of facts, (b) application of law to the facts, and (c) the rendition of a judgment or order based on the legal effect of such facts." Here, the commissioners were deciding whether to relinquish an interest in property owned by the county. That body was not ascertaining facts against which to apply the law for purposes of resolving a legal dispute. Nor did it have before it litigation between parties requiring investigation into facts and application of law to them. *See Martin,* 578 S.W.2d at 769 (noting "process" to be "incident to litigation"). Consequently, the decision to close the road and convey title to the land underlying it did not arise from an exercise of any judicial function by the commissioners court. It likened to a mere executive decision regarding disposition of county property.

In short, the CIG Road Order lacked the traditional indicia of a "process." Lacking that indicia, it was not one. Just like calling Peewee Herman "Rambo" does not make him Rambo, appending the word "order" to the decision to close the road does not make it some sort of "process" for purposes of the claim at bar.

In so concluding, we note Scout's citation to *Rose v. First Am. Title Ins. Co.*, 907 S.W.2d 639 (Tex. App.—Corpus Christi 1995, no writ), but disagree with the suggestion

9

that it obligates us to deem the CIG Road Order a "process." The *Rose* court dealt with a "grievance letter to Texas State Board of Accountancy" that First American used to initiate a grievance proceeding. This letter allegedly constituted a "process" by the court, according to Scout. *See id.* at 643–44. Yet, nothing in our reading of that opinion indicates as much. Rather, upon observing that First American merely filed a complaint (i.e., the letter) with that Board and did nothing else, the *Rose* panel decided that those circumstances warranted summary judgment rejecting the claim of abused process. *Id.* at 644. Nowhere did it say that the letter or complaint was a "process" upon which the claim could be founded. *See id.*

Nor is Scout's mention of *Davis*, 433 S.W.3d at 110–12, any more beneficial to it. That claim of abused process was founded upon a court order appointing a receiver and apparently ordering Davis to turn over property. In affirming the summary judgment against the complainant, the court stated that "Davis presented no evidence that HRS misused process to compel Davis to act in a collateral way; rather, the only evidence is that ***the process*** was used to satisfy the debt." *Id.* at 111–12 (emphasis added). Assuming that the edict appointing the receiver and directing someone to turn over property was "the process" to which the court referred, that edict arose from litigation between Davis and HRS. As noted earlier, there was no "litigation" between Indian Springs, Scout, or any of Scout's predecessors in title before the commissioners court. The edict in *Davis* also mandated action, e.g., the appointment of a receiver coupled with the turnover of property by a litigant. Again, the CIG Road Order mandated no action or inaction from Indian Springs, Scout, or any predecessor in interest of Scout. So, *Davis* is inapposite.

Concerning Scout's reference to a particular passage in *Martin* as illustrating that the order at bar is a "process," that effort too falls short. The passage to which we refer is that stating that "[p]rocess has been broadly interpreted to encompass the **entire range of procedures incident to litigation**." *Martin*, 578 S.W.2d at 769 (emphasis added). Reading it out of context could lead one to believe that something being a "process" is not dependent on it being a directive from a court compelling action or inaction but rather on it being a "procedure incident to litigation." Such an interpretation would mean that most every discovery request would be a "process" for they are procedures utilized in and, therefore, incident to litigation. Serving a copy of a motion upon an adversary per Texas Rule of Civil Procedure 21a would also be a "process" under that analysis for it too is a procedure which must be followed during litigation. Yet, we care not to denude the idea of a "process" of its elements relating to something issued under judicial imprimatur mandating action or inaction. Indeed, other courts have hesitated to interpret the passage in *Martin* as expansive as the request made here. For instance, the panel in *Landry's, Inc. & Houston Aquarium, Inc.,* 566 S.W.3d at 64, noted that not only was the "process" at issue in *Martin*, the issuance of citation, but also all of the examples of "process" mentioned in that opinion were "documents issued by a court." *Id.* That led it to say: "We find no authority for treating a 60-day notice letter under the Endangered Species Act as 'process' for the purpose of an abuse-of-process claim." *Id.* In other words, the *Landry's* panel recognized that when the *Martin* passage is read in context, it does not mean that any item relating to a "procedure incident to litigation" constitutes a "process." It still has to be something akin to a citation, writ, summons, or the like. And, if the word "process"

11

is to be expanded from its original scope to include any "procedure incident to litigation," we will leave that to our Supreme Court.

Simply put, Scout failed to establish a prima facie case on an element of its claim, that element being the existence of a "process." Consequently, the trial court did not err in granting Indian Springs' TCPA motion and dismissing Scout's suit. Yet, that does not end our work. We must now address Scout's contention that the trial court "abused its discretion by awarding attorneys' fees to Indian Springs" under § 27.009(c) of the Civil Practice and Remedies Code.

Per § 27.009(c), "[i]f the court orders dismissal of a compulsory counterclaim . . ., [it] may award to the moving party reasonable attorney's fees incurred in defending against the counterclaim if the court finds that the counterclaim is frivolous or solely intended for delay." TEX. CIV. PRAC. & REM. CODE ANN. § 27.009(c). Though the statute fails to define "frivolous," a claim is commonly understood to be frivolous when it lacks basis in law or fact. *Clayton Mountain Dev., LLC v. Ruff*, No. 11-20-00034-CV, 2021 Tex. App. LEXIS 6293, at *16–17 (Tex. App.—Eastland Aug. 5, 2021, no pet.) (mem. op.); *Keane Frac, LP v. SP Silica Sales, LLC*, 608 S.W.3d 416, 432–33 (Tex. App.—Houston [1st Dist.] 2020, no pet.). That is the case here.

As explained above, procuring "process" clearly falls outside the scope of the claim. So, neither fact (as alleged by Scout) nor existing law supports the contention about Indian Springs abusing process by seeking closure of the CIG Road. The same is true regarding Indian Springs later conduct. It did not involve use of a "process," as the latter term has historically been defined in Texas. And, when the passages of *Martin* upon which Scout relies are read in context, they provide no reasonably arguable basis

12

to expand the definition in a way encompassing the decision to close the road. So, the claim of abused process was frivolous, even if we were to assume it were averred in a compulsory counterclaim.

Scout's issues are overruled, the trial court's order of dismissal is affirmed.


Brian Quinn
Chief Justice